---

C. T. CROSS, *Plaintiff in Error*, v. THE ROBINSON POINT LUMBER COMPANY, A CORPORATION, *Defendant in Error*.

1. Where in a suit in ejectment the typewritten transcript of the record shows that a deed was introduced in evidence, with the word "Seal" enclosed in parentheses following the names of the grantors signed to the deed, an objection that the deed was without a seal is not sustained

2. Where in ejectment the depositions of two old persons were offered in evidence containing a writing offered as a deed made by them in 1874, which does not describe the land in contro-

versy, and is not under seal, and also an affidavit of one of them made afterwards to the effect that he had executed a deed of the lands in controversy to a person through whose heirs the defendant seeks to hold the property, in 1859, or in 1860, and that when he subsquently made a deed of the said land to a person through whom the plaintiff claims the land, the affiant thought he was duplicating the original deed made in 1859 or 1860, the court committed no error in striking the deed and affidavit from the depositions, although the party offering the depositions in evidence claimed the right to do so to avoid the contradictions and unfavorable testimony contained in the depositions.

3. A deed was offered in evidence by the plaintiff, as a link in his title, which was attested by a witness thereto, who furnished a part of the purchase money for the land, and the title was taken by the grantee in trust for this witness and the person who furnished the rest of the purchase money. The grantee in the deed sold and conveyed the land before the suit in this case was brought, and divided the purchase money between the witness to the deed and the other person entitled thereto. The deed on its face did not show the interest of the witness, and it does not appear that the plaintiff at the time of the purchase and conveyance of the property, had any knowledge that the witness to the deed had any interest therein when it was executed. *Held*, under these circumstances applying our statute removing the disability of witnesses on account of interest, that the witness to the deed was not incompetent as an attesting witness thereto.

4. There is no error in giving an affirmative charge in favor of the plaintiff in an action of ejectment, who has shown title to the property in dispute, when it appears that the defendant was simply a trespasser.

This case was decided by Division B.

Writ of Error to the Circuit Court for Santa Rosa County.

The facts in the case are stated in the opinion of the court.

*Maxwell & Reeves,* for plaintiff in error;

*T. F. West,* for defendant in error.

HOCKER, J.—The defendant in error brought an action of ejectment against the plaintiff in error in the circuit court of Santa Rosa county in November, 1906. The case was tried at the spring term, 1907, which resulted in a verdict and judgment for the plaintiff, which the defendant seeks to reverse on writ of error.

The plaintiff deraigned title to the lands sued for, *viz*:.Nw¼ and w½ of sw¼ section 34, township 4, N. R. 27 west, by introducing in evidence a patent of the United States, dated April 1st, 1862, conveying said lands to William A. West, and by a deed from William A. West and wife, Mary ·C. West, to M. A. Harrison dated December 3rd, 1903, and by a deed from M. A. Harrison to Mrs. Florence Collins dated April 15th, 1904, and by deed from Florence Collins and R. E. Collins, her husband, to Thomas F. West, dated July 15th, 1904, and by deed from Thomas F. West and wife to The Robinson Point Lumber Company, a corporation, the plaintiff, dated July 16th, 1905.

It was agreed that the defendant was in possession of the said *lands under a* portion of the ·heirs of W. D. J. Collins and Pamelia ·A. Collins, beginning December 13th, 1905.

Assignments one and thirteen are based on the ruling of the trial court in overruling the objections of the defendant to the deed from Thomas F. West and wife to The Robinson Point Lumber Company, the plaintiff, and in refusing to strike the same. The objections to the deed in both instances were that it was not sealed.

In the type-written transcript of the record before us the word "seal" enclosed in parentheses follows the names of Thomas F. West and Mrs. Alma West, signed to the said deed, and the testimonial clause immediately preceding the signatures is: "In witness whereof we have hereunto set our hands and seals this 16th day of July, 1905." As the transcript must be presumed to be correct,

we think it sufficiently appears that the deed was sealed. Langley v. Owens, 52 Fla. 302, 42 South. Rep. 457, and cases cited.

Assignments two, five, seven, eight, ten and fifteen are treated together, as they each relate to the action of the trial court in striking from the depositions of William A. West and his wife, Mary West, a copy of a deed executed by them to P. A. Collins, wife of W. D. J. Collins, in 1874, and an affidavit of W. A. West made in 1906. The defendant claimed to be in possession of the land in dispute through the heirs of W. D. J. Collins and wife. Mr. and Mrs. West were very old people —Mr. West being over ninety years old. Mrs. West did not know her exact age, but states she had been married to W. A. West fifty-two or fifty-three years or more. It is evident from their testimony that their recollection of past events was very uncertain. Their depositions were offered in evidence by the defendant. Th object of their testimony in part was to show that they had made a deed of the lands in controversy in 1874 to Mrs. P. A. Collins the wife of W. D. J. Collins. They were shown a paper purporting to be a deed, but not under seal, executed by William A. West to Mrs. P. A. Collins on the 6th of November, 1874, in which West conveyed to Mrs. A. P. Collins the ne¼ and w½ of the se¼ of section 34, tp. 4 north, range 27 west, which description does not cover the land in controversy. This deed which was contained in the depositions is the one which was stricken therefrom. The affidavit of West which was stricken from the depositions is in the following words:

"STATE OF ALABAMA,

COUNTY OF MONROE.

William A. West, being by me duly sworn deposes and says: That he is the identical William A. West, who entered in the United States Land office the follow-

ing described lands, to-wit: The nw¼ and the west ½ of the sw¼ of section 34, township 4, range 27 north and west, situate, lying and being in the county of Santa Rosa, state of Florida, that on or about the......day of .........A. D. 1859-60 by deed, for a valuable consideration, he conveyed the said lands to W. D. J. Collins his heirs and assigns forever, last of Santa Rosa county, Florida; that at the time of the execution of the deed to M. A. Harrison by himself, bearing date of December 3rd, 1903, whereby he undertook to convey the above described lands, the said Harrison was cognizant of the fact that deponent had before conveyed the said lands to the said Collins for the reason that deponent then and there so informed him; that the execution of the said deed to the said Harrison came out in this way: I thought when I signed the deed to Harrison that I was duplicating the original deed made by me in 1859, or 60, to Collins and not making any new conveyance to any one, it was so represented to me by the parties. This land was deed to me from the government and I deed it to Collins on the above date and have ceased since that time to claim any ownership and believed when I made a deed to Harrison that I was duplicating the original deed to Collins.

his

WILLIAM A. (x) WEST,

mark

Sworn to and subscribed before me this 14th day of February, 1906.

W. C. NEVILLE, State of Alabama,

Justice of the Peace, Monroe County."

A further object of the examination of W. A. West and his wife by the defendant was to show that they had made a deed to W. D. J. Collins of the land in controversy about 1859 or 1860, which deed had been lost and that the deed made to Harrison in 1903 was made at

the instance of Harrison to confirm the lost deed made to W. D. J. Collins in 1859 or 1860. Mr. West, however, testified that he never conveyed the land to Collins, though he admitted he might have conveyed the timber. His recollection, however, was very indistinct. Mrs. West's recollection was also indistinct and uncertain. The defendant then confronted Mr. West with the affidavit he had made in February, 1906, in which he had sworn that the deed he made to Harrison was made to confirm the deed to Collins, and asked if he did not make that affidavit. He both denied and admitted he made the affidavit, and denied and admitted he made the deed to Harrison to confirm the lost deed made to Collins. It is perfectly evident from the deposition of Mr. West that old age had affected his memory, and perhaps had dulled his understanding. The same may be said of Mrs. West. It is strenuously contended here by the defendant in error that he was entitled to have this affidavit introduced in evidence in order to counteract the features of the testimony of Mr. and Mrs. West which were unfavorable to him. It does not affirmatively appear that the depositions were read' to the jury on the trial, though the trial judge ruled that the depositions might be introduced with the affidavit and deed to Collins made in 1874, stricken out. The attempt by the defendant to contradict his witnesses was made. before the master or examiner, and not before the jury. The defendant knew of course, what the testimony of West was before the case came on for trial. He was not therefore surprised on the trial by an adverse witness. It can scarcely be said that their evidence before the master was adverse. These witnesses were simply old people whose memories were defective, and whose understandings were confused and dulled by time. They simply failed to testify to "beneficial facts that were expected from them." Mercer v. State, 41 Fla. 279, 26

South. Rep. 317. The affidavit of West was an entirely ex parte affair, and the deed to Mrs. P. A. Collins dated November 6th, 1874, did not describe the land in controversy and was not under seal. We can discover no error in the ruling of the court. If the defendant was entitled to claim the land under the so-called deed to Mrs. Collins made in 1874, he at least could not do so in a common law suit, in the condition in which it is presented here.

Assignments eleven and twelve are based upon the action of the court in refusing to strike the deed from W. A. West and wife to M. A. Harrison, dated December 3rd, 1903, under which by mesne conveyances the plaintiff claims title. The defendant proved by D. C. Norris one of the witnesses to the deed, and by M. A. Harrison, the grantee, that the consideration for the deed was paid by D. C. Norris and W. W. Harrison, a brother of M. A. Harrison, and that when the land was sold they received the purchase money. It is contended that inasmuch as D. C. Norris was interested in the land he was incompetent to be a witness to it, and therefore the deed is void under the statute which requires that a deed of land shall be executed in the presence of two subscribing witnesses (Section 2448 Gen. Stats. of 1906). The defendant in error contends that under the statute (Section 1505 Gen. Stats. of 1906, first adopted by Section 1, Chap. 1983, Laws of 1874), the incompetency of witnesses because of interest was removed except as therein provided, and therefore that Norris was not incompetent at the time he witnessed the deed. Our decisions construing this statute furnish no especial instruction upon this precise question and the information we get from the decisions of other courts in construing similar statutes is not of the most satisfactory kind. There is a luminous account of the origin of the statutes, both in England and the United States, which remove the

disqualification of witnesses because of interest in 1 Wigmore on Evidence, §576. Wigmore says that the Common Law Rule which prevailed in 1700 .s. is in its essence reducible to the following syllogism: "Total exclusion from the stand is the proper safeguard against a false decision, whenever the persons offered are of a class specially likely to speak falsely; Persons having a pecuniary interest in the event of the cause are specially likely to speak falsely; Therefore such persons should be totally excluded. This theory may be perceived running through all the authoritative expositions of the doctrine: * * * The answer to this syllogism is merely that both its premises are sound,—that pecuniary interest does not raise any large probability of falsehood, and that, even if it did, the risks of false decision are not best avoided by excluding such testimony." Wigmore then proceeds to quote from Bentham—from the Second Report of the English Common Law Practice Commissioners of 1853—from the New York Commissioners on Pleading and Practice Report of 1848—from Lord Chief Justice Denman and from Lord Brougham—what he calls exposition of the fallacies. It is certain these expositions resulted in statutes in England and many of the United States, removing the disqualification of interest in a witness. See, also, 3 Taylor on Evidence, §1342, *et seq.* In the application of the doctrine of disqualification because of interest to witnesses to deeds and wills there does not seem to be uniformity in the decisions. In some cases it is held that the witness must be qualified at the time of attestation, but in others it is sufficient if the witness is competent at the time the attestation is to be proved. Frink v. Pond, 46 N. H. 125; Smith v. Chamberlain, 2 N. H. 440; Winsted Savings Bank and Building Assn. v. Spencer, 26 Conn. 195. In the last cited case a stockholder of a private pecuniary corporation was a witness to a deed

made to the corporation. It was held he was incompetent inasmuch as the statute of Connecticut removing the disqualification of interest in a witness contained a qualification which prevented the act from applying to the attestation of wills or conveyances of real estate. See, also, Frink v. Pond, 46 N. H. 125. In the attestation of wills the competency of witnesses is sometimes determined by special statutes. In re Holt's Will, 56 Minn. 33; 57 N. W. Rep. 219, 45 Am. St. Rep. 434. In the case of Fisher v. Porter, 11 S. D. 311, 77 N. W. Rep. 112, it was held that under the statute removing the disqualification of witnesses on account of interest, in the event in the action a mortgagee would be a competent witness to the execution of a mortgage. In the case of Donovan v. St. Anthony & D. Elevator Co., 8 N. D. 585, 80 N. W. Rep. 772, it was held that the statutes removing the disqualification of witnesses did not apply to the parties to a mortgage. In the case of Read v. Toledo Loan Company, 68 Ohio St. 280, 67 N. E. Rep. 729, S. C. 96 Am. St. Rep. 663, it was held that the fact the subscribing witnesses to a deed are stockholders in the corporation grantee, or have some other interest not apparent on the face of the deed, does not disqualify them from acting as such witnesses. In the case of Hogans v. Carruth, 18 Fla. 587, decided in 1882, this court held that the acknowledgment of a deed taken by the grantee is void. We have found no case where the facts were like those of the instant case. It does not appear that the plaintiff at the time of the purchase and conveyance of the property in dispute, for which it paid a valuable consideration, had any knowledge of the fact that Norris had any interest in the deed from West to Harrison. Norris' interest does not appear from the deed itself, and he testified that when the land was sold he was paid his part of the purchase money, so that he had no interest in the event of this suit at the time of the

trial.   Under all these circumstances we are of opinion that under our statute (Section 1505 Gen. Stats. of 1906) Norris was a competent witness to the deed, and the court committed no error in refusing to strike it from the evidence.

Assignment sixteen complains of the affirmative charge given by the court in favor of the plaintiff.   The defendant claimed the land under a portion of the heirs of W. D. J. Collins and his wife, P. A. Collins.   He went into possession in December., 1905.   It does not appear from the evidence that either of these parties ever had any paper title to the property in dispute.   It appears that W. D. J. Collins had cut timber from the lands now and then from 1872 until 1880, or may be later than that.   He built a cabin on it for a camp for hands to stay in at night.   It does not appear that Collins ever fenced or cultivated any part of the land.   He never, therefore, acquired title by adverse possession under Sections 1721 or 1722 General Statutes of 1906, and none descended to his heirs.·   Harris v. Butler, 52 Fla. 253, 42 South. Rep. 186.   The defendant consequently was simply a trespasser.   We are of the opinion that the court committed no error in giving the affirmative charge. See Cross v. Aby, decided at the present term.

No other assignment is urged.

The judgment of the court below is affirmed.

TAYLOR and PARKHILL, JJ., concur;

SHACKLEFORD, C. J., COCKRELL and WHITFIELD, JJ., concur in the opinion.