## State *v.* H. C. Lawrence.

### [61 South. 975.]

1. Constitutional Law. *Due process. Automobiles. Regulation fees. Laws* 1912, *chapter* 108. *Police power.*

　　Under its police power the state has the undoubted right to regulate the use of its highways, included in which is the right to compel the registration and numbering of automobiles before they are permitted to be used on the highway, but the expense thus imposed must be a reasonable, proper and fair exaction, when considered with reference to the object to be attained and surrounding facts.

2. Same.

　　Laws 1912, chapter 108, providing for the numbering and registration of automobiles, owned and operated in this state, and providing for the payment of a registration fee of from five to twenty-five dollars according to the horse power of the engine, is an unreasonable exercise of governmental power, the actual cost of such numbering and regulation being only one dollar, and the act therefore violates the due process clause of the state and Federal Constitution and is void.

Appeal from the circuit court of Hinds county.

Hon. W. A. Henry, Judge.

H. C. Lawrence was convicted of violating the automobile law in a justice of the peace court and on appeal to the circuit court was acquitted and the state appeals.

　The appellee was arrested upon a warrant made by a constable of Hinds county, charging a violation of chapter 108 of the Laws of 1912. He was convicted, and appealed to the circuit court, where, on a trial *de novo* before the judge, sitting as judge and jury, he was acquitted, and the state appeals to the Supreme Court to settle the question of law.

　The act in review provides that it shall be the duty of every owner of an "automobile, . . . or other four-wheeled vehicle, propelled by gas, steam, or electricity, to

report to the auditor of public accounts showing in said report the name or make of the vehicle owned by him, the motive power thereof, the maximum horsepower capacity of the engine which operates such vehicle, the name of the owner of the vehicle, the postoffice address of such owner, the name of his county,'' and makes the failure to do so a misdemeanor. Upon receipt of said report, with the fee prescribed, the auditor is required to send the said owner two tags, with serial numbers, which the owner shall attach to his automobile, one in front and one in the rear, and it is made a misdemeanor to drive such automobile without said tags being attached thereto. A scale of registration fees is prescribed, varying according to horsepower from five dollars to twenty-five dollars, which fees are required to be paid annually to the auditor, and by him turned in to the state treasurer to the credit of the general fund. This fee is not in lieu of the ad valorem tax or privilege license for operating an automobile for hire.

The case was tried on an agreed statement of facts, hereinafter set out; it being the theory of the defendant that the act of the legislature was unconstitutional and void.

## ''AGREED STATEMENT OF FACTS.

''It is agreed between the attorneys for the state and the defendant that this case shall be heard by the court sitting as both judge and jury on the agreed facts hereinafter set out, as there is only a question of law involved, to-wit, the constitutionality of chapter 108 of the Laws of 1912.

''It is agreed that H. C. Lawrence did on the second day of August, 1912, in the city of Jackson, first judicial district of Hinds county, Mississippi, in justice of the peace district number one of said county, drive on the public streets of said city a certain forty horsepower

Haynes automobile, owned by him without first having procured from the auditor and having exposed on said automobile the tags required by chapter 108, Laws of Mississippi of 1912, and without having paid the auditor the fee required, though no demand was made of him to do so.

"It is further agreed that these tags cost the state seventeen and one-half cents a pair, the express on same is 16 cents a pair, and the labor performed in registration consists in making nine entries on one line in a book kept by the auditor for that purpose, and requires not more than five minuets' time.

"It is further agreed that said automobile is a four-wheeled vehicle propelled by gasoline, and that all ad valorem taxes due the city, county, and state on same have been paid, and that a license to keep said automobile for hire to the public has been paid as required by chapter 96, Laws of 1910, and also a privilege tax paid for conducting a public garage; that said automobile has been duly registered and numbered by the proper authorities of the city of Jackson, and the uniform registration fee of two dollars paid said city; and that defendant is and was then a duly licensed chauffeur in said city and paid the sum of sixty cents for license."

*Frank Johnston,* assistant attorney-general, for the state.

The questions which I presume will be raised, and according to my view of the case, the only ones that can be raised, I will state as follows:

1. The question as to the power and extent of the authority of the legislature under the police power of the state to regulate the use of the public highways of the state for the safety and convenience of the traveling public, involving as this question does, the regulation of the use on the public highways of any species of vehicle operating by steam or gasoline, which are dangerous to the traveling public.

2. The authority and power of the legislature to require such vehicles to be registered and numbered and licensed, and also including the authority of the legislature to require the payment of a fee for that purpose. This involves the entire question as to the power and authority of the legislature to regulate the use of the highways and to prescribe the terms and conditions upon which any and all vehicles, and especially those whose use is attended with unusual danger, as in the case of automobiles, may be operated.

3. Whether this license tax or registration tax, more properly speaking, is a tax laid by the legislature, which is in effect an ad valorem or specific property tax, and laid by the legislature under the mask and guise and pretense of its being a registration or license tax or regulation tax.

4. Is the Act of 1912 to be classed as discriminating class legislation under the fourteenth amendment to the Federal Constitution?

5. Is this registration fee to be regarded as a double tax, and if it is double taxation, is it illegal and invalid as such?

I will discuss these propositions in the order in which they are stated.

1. Proposition: The question as to the power and extent of the authority of the legislature under the police power of the state to regulate the use of the public highways of the state for the safety and convenience of the traveling public, involving as this question does, the regulation of the use on the public highways of any species of vehicle operating by steam or gasoline, which is dangerous to the traveling public. The first proposition that I will submit to the court is that the act March 16, 1912, Acts of 1912, page 89, is an act passed in pursuance of the police power of the state; that it is purely and simply an act regulating the use of automobiles on the public highways, and it can only be classed as a regulation statute,

and as such, enacted by the legislature under its police power. Huddy on Automobiles, sec. 53; Ibid., sec. 57, p. 60; *Dudley* v. *Street Ry. Co.*, 202 Mass. 443, 89 N. E. 225; *Chae* v. *Railroad Co.*, (Mass. 1911), 94 N. E. 377; *Cechi* v. *Lindley* (Del. Sup. 1910), 75 Atl. 376; *Feely* v. *City of Melrose*, 205 Mass. 329, 27 L. R. A. (N. S.) 1156; *Bourne* v. *Whitman* (Mass. 1911), 95 N. E. 404; *Emerson Troy Granite Co.* v. *Pearson*, 74 N. H. 22, 64 Atl. 562; *People* v. *Schnider*, 139 Mich. 673, 103 N. W. 172, 69 L. R. A. 345.

This same author says that the power of the legislature to require a license and registration and a fee in the state is absolutely unquestionable, and the same power may be exercised by a municipality when authorized by statute. Huddy on Automobiles, sec. 61, p. 67; *Commonwealth* v. *Boyd*, 188 Mass. 79, 74 N. E. ——; *People* v. *Schnider*, 139 Mich. 673, 103 N. W. 172; *Commonwealth* v. *Hawkins*, 14 Pa. Dist. 592; *Commonwealth* v. *Densmore*, 29 Pa. Co. 217; *Christy* v. *Elliott*, 215 Ill. 31, 74 N. E. 1035; *Union* v. *State*, 73 N. J. L. 529, 64 Atl. 163; *Claerly* v. *Johnston*, 79 N. J. L. 49, 74 Atl. 538; *Kane* v. *Titus* (N. J. L. 1911), 80 Atl. 145; *Unwin* v. *State* (N. J.), 64 Atl. 163, ·affirmed in 75 N. J. L. 500, 68 Atl. 1110.

"Besides a general power of regulation, the state has power to impose burdens in the nature of taxation upon special occupations or special kinds of property with a view rather to regulate than for revenue, under the power of police." Black's Constitutional Law, 348; Babbitt on Motor Vehicles, 141; *Storage Company* v. *Chicago*, 235 Ill. 58, 85; *Guardside Case*, 43 Ill. 47; *Bank* v. *Aptrorpe*, 12 Mass. 252-256.

2 and 3. Propositions: 2. The authority and power of the legislature to require such vehicles to be registered and numbered and licensed, and also including the authority of the legislature to require the payment of the fee for that purpose. 3. Whether this license tax or registration tax is a tax laid by the legislature, which is in ef-

fect an ad valorem or specific property tax, and laid by the legislature under the guise and pretence of its being registration or license tax or regulation tax.

It is conceded that the use of the public highways is for the public, and that everybody has in a restricted manner, the right to use the public highways of the commonwealth, but while this is true, it is equally true and sound as a doctrine of legislative authority that the control and regulation of the public highways of the state comes legitimately and properly within the police power of the legislature. Mr. Babbitt says that the legislative control over the highways grows out of its duty to administer the police power which has for its primary object the public safety, order and government. *People* v. *Walsh,* 96 Ill. 232; *Fletcher* v. *Dixon* (1908) 107 Md. 420, 426.

4. Proposition: Is the Act of 1912 to be classed as discriminating class legislation under the fourteenth amendment to the Federal Constitution? The Act of 1912 is constitutional, and it is not illegal class discrimination, and it is not class discrimination at all. It is not class discrimination or class regulation that is prohibited by the fourteenth amendment, but it is arbitrary, unreasonable, and unjust class discrimination or race discrimination that is condemned by this amendment to the Federal Constitution. Huddy on Automobiles, sec. 63, p. 75 and sec. 64, p. 78; *Missouri* v. *Lewis,* 101 U. S. 22, 23; 215 Ill. 31; 74 N. E. 1035; 108 Mass. 79; 139 Mich. 673; 73 N. J. L. 529; 64 Atl. 163.

5. Proposition: Is this registration to be regarded as a double tax, and if it is double taxation is it illegal and invalid as such? The registration fee is not illegal because of the objection that it is double tax. Babbitt on Motor Vehicles, pp. 137-138; Black's Constitutional Law, p. 348; *Rohn* v. *Gray,* 80 Md. 274-276; see *License Tax Cases,* 5th Wallace, 472; 91 U. S. ——; Cooley on Taxation (3d Ed.), p. 392.

*Tim E. Cooper,* for appellee.

That legislation under the police power is free from restraint by the courts, is not, I submit, true to the extent claimed by counsel. I shall quote only from one decision of the supreme court of the United States. In *Lawton* v. *Steele,* the validity of all acts of the legislature of New York for the preservation of its fisheries was brought in question. The act was confessedly within the police power of the state; but one of its provisions was that any net pound appliance used in taking fish was a nuisance and might be destroyed by any person, and it was urged that this provision was unconstitutional.

1st. By depriving the citizen of his property without due process of law.

2nd. As being in restraint of the liberty of the citizen.

3rd. As being an interference with the admiralty and maritime jurisdiction of the United States.

The court having referred to the nature of the police power and given many illustrations proceeded thus: ''Beyond this, however, the state may interfere wherever the public interests demand it, and in this particular a large discretion is necessarily vested in the legislature to determine, not only what the interests of the public require, but what measures are necessary for the protection of such interests. *Barbier* v. *Connolly,* 113 N. S. 27 (28:923); *Kidd* v. *Pearson,* 128 N. S. 1 (32:346). To justify the state in thus interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise

of its police powers is not final or conclusive, but is sub-
ject to the supervision of the courts.  Thus an act requir-
ing the master of a vessel arriving from a foreign port to
report the name, birthplace and occupation of every pas-
senger, and the owner of such vessel to give a bond for
every passenger so reported, conditioned to indemnify
the state against any expense for the support of the
persons named for four years thereafter, was held by
this court to be indefensible as an exercise of the police
power, and to be void as interfering with the right of
Congress to regulate commerce with foreign nations.
*Henderson* v. *Wickham,* 92 U. S. 259 (23:543).  A similar
statute of California, requiring a bond for certain classes
of passengers described, among which were ''lewd and
debauched women,'' was also held to show very clearly
that the purpose was to extort money from a large class
of passengers, or to prevent their immigration to Cali-
fornia altogether, and was held to invade the right of
Congress.  *Chy Lung* v. *Freeman,* 92 U. S. 275 (23:550).
So in *Railroad Co.* v. *Husen,* 95 U. S. 465 (24:527), a stat-
ute of Missouri which prohibited the driving of Texas,
Mexican, or Indian cattle into the state between certain
dates in each year was held to be in conflict with the com-
merce clause of the Constitution, and not a legitimate
exercise of the police powers of the state, though it was
admitted that the state might for its self-protection pre-
vent persons or animals having contagious diseases from
entering its territory.  In *Rockwell* v. *Nearing,* 35 N. Y.
302, an act of the legislature of New York, which author-
ized the seizure and sale without judicial process of all
animals found trespassing within private enclosures, was
held to be obnoxious to the constitutional provisions that
no person should be deprived of his property without due
process of law.''   152 U. S. 133.

Viewing the act as one imposing a mere registration
fee, and not a tax for revenue, the sum charged is so
grossly excessive as to bring it within the condemnation

of the Constitution, which declares that "no person shall be deprived of life, liberty, or property without due process of law."

Grant the broadest scope of the police power, it must when exercised in the language of the supreme court of the United States, "be reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals. The legislature may not, under the guise of protecting the public interests, arbitrarily interfere with private business, or impose unusual and unnecessary restrictions upon lawful occupations. In other words, its determination as to what is a proper exercise of its police powers, is not final or conclusive, but is subject to the supervision of the courts."

I am not considering the act as one intended as a revenue measure. I will come to that a little later. Looking at the act in the character declared by its title, as a mere registration act, and the fee charged as a mere registration fee, imposed under the police power, it is submitted that the charge imposed is so grossly excessive as to bring the act within the condemnation of that clause of our Constitution protecting the citizen in the ownership and use of his property. I concede that the court will not, save from necessity, attribute to the legislature a sinister purpose, which I suppose is meant here, a purpose to impose a tax, under the guise of registration fee.

The suggestion of the Attorney-general, however, operates in both directions. The legislature has called the fee a registration fee. If it is that and nothing more, and it is so grossly excessive as to render the act invalid, how is its validity to be sustained save by attributing to the legislature the sinister or indirect purpose of intending it as a revenue, and not a police function? But the court, I submit, will be inevitably forced to the conclusion that the act was intended as a revenue act. It is not in its scope of police regulation. It does not regulate the speed, or the use of the licensed machine; it declares no

laws of the road, no use of lights, no precaution to be exercised in meeting or passing vehicles drawn by animals; it imposes no penalties for the protection of others upon the highways. The only prohibition or regulation to be found is the prohibition of the lawful use of property, except upon the payment of an arbitrary and excessive charge.

The act, not only under the guise of the police power, attempts to regulate the use of property, but imposes the burden of the so-called registration fee upon the mere ownership of an automobile. There are two distinct penalties imposed, one by the first section of the act, which is upon the mere ownership of an unregistered machine; the other by the second section, which is, upon the "operating or permitting to be operated" in the state an unregistered car. The draughtsman of the act evidently copied parts of the statute of some other state, in which it was intended to reach cars in the hands of dealers in automobiles. Some of the statutes, e. g., that of Pennsylvania, requires the registration of machines operated or driven upon public highways. Huddy on the Law of Automobiles (1st Ed.), p. 281. Others like Rhode Island require the registration of machines "owned." Id., p. 286. But provision is made that the manufacturer or dealer may instead of registering each machine, procure a distinguishing number or mark. Id., p. 287. And these acts treat the registration fee as a road tax. Id., p. 288.

But the draughtsman of the Act of 1912 made unlawful as well to own, as to operate a machine. How the ownership, and not the use upon the public highways of an automobile can bring the owner within the police power of the state is not perceived, but such is the manifest provision of the act. Mr. McDowell has argued at length the invalidity of the act, as a completed revenue act. I shall not go over that ground. If the act is not valid as a registration act under the police power, I do not think the court will reach its consideration as a revenue law. If it

was intended as a revenue act, the purpose of the legislature to pass it as such was studiously concealed. A revenue purpose can be imputed to it only by construction, and this only because of its invalidity as a registration law. But as a revenue act it falls squarely within the condemnation of section 71 of the Constitution, as has been directly held by this court. *Levee Commissioners* v. *Insurance Co.,* 96 Miss. 832.

It surely cannot be said that a title declaring "the subject" matter of a proposed act to be the "registration of automobiles owned and operated in the state, and to provide for the payment of registration fee 'indicates' clearly the subject matter of the legislation" to be the taxation of automobiles "owned or operated in the state." The title of the act has no sort of reference to the subject of taxation. It relates solely to the exercise of another distinct power, under which taxation cannot be imposed for revenue. Black's Cons. Law. (2d Ed.), sec. 167, p. 396.

In *Borough of Sewickley* v. *Stroles,* 118 Pa. 165, the title of the act was, "To exempt from taxation public property used for public purposes." The proviso of the act declared all other property subject to taxation, and the court held it to be invalid, as an attempt to impose taxation not indicated in the title. If the body of the act had expressly disclosed a purpose to tax it would have been restricted by the title. *State* v. *Bryan,* 50 Fla. 293; *Ex parte Knight,* 52 Fla. 144, 41 So. 786.

*Jas. R. McDowell,* for appellee.

To begin with it is clear, and there is no dispute on this point, that it is not a road tax or a privilege tax, two of the common forms of taxes levied in addition to the ad valorem tax and which legislatures have the power to impose. Then the question to be determined is simply whether the tax levied in this act is a registration fee or a revenue tax. I concede that the legislature has a right

under its police power to pass laws for the registration of automobiles and collect the fees. But I deny that this legislature, in passing this act, acted within its power, for the simple reason that it is a revenue measure with not one word in the bill indicating that it was the purpose of the legislature to regulate automobiles in any way whatever except to get some money from the owner. It is a time-honored maxim that the state cannot indirectly tax that which it would not tax directly and so if the amount of this tax, the method of its collection, its application after collected and the manner in which it is sought to be levied, would indicate that it is a tax under the guise of a registration fee, then I contend that the courts should not hesitate to declare it to be a tax and therefore illegal and void.

I have examined numerous cases in which the authority of levying the registration tax was upheld and all of them construe statutes where the registration is reasonable with the service rendered or where the tax is in fact a road tax. The argument is made in many of these cases that the state, or municipality as the case might be, has a right to levy a road tax upon vehicles which wear out and destroy its roads and it is upon that theory that the wheel tax in Chicago was sustained. In many places the wheel tax applies to all vehicles, but I note that in some places, wheeled vehicles other than automobiles are taxed and in still others, automobiles only are taxed with this wheel tax.

I am willing to admit that the state has a right to levy this wheel tax for road purposes and to levy it only on automobiles as a class, but that is not the case here. The legislature of 1912 was out after the dollars and never thought of the roads and never dreamed of attempting to regulate the operation of automobiles on the public roads of the state, and in fact did not attempt to do so. Huddy on Law of Automobiles (1st Ed.), p. 37; Berry on Law of Automoblies, chapter on State License Laws, p. 72.

Counsel quoted from Black's Constitutional Law, p. 248. I do not dispute the fact that the state has a right to impose a privilege tax on special occupations but I call the court's attention to the fact that no such tax is sought to be levied here. By referring to Huddy's treatise on Automobiles (3d Ed.), sec. 59, p. 65, it will be seen that the very purpose of registration is that the vehicles should be more readily identified and that certain regulations might be enforced. *Mugler* v. *Kansas,* 123 U. S. 661, 31 L. Ed. p. 210; *Railroad* v. *Hoboken,* 41 N. J. L. 71. Mr. Cooley in his works on taxation, p. 408, takes a view that the license fees which may be exacted under police power are confined within the limits of the necessary or probable expenses of issuing the license and to inspect, regulate, etc.

To the same effect, see *Unwen* v. *State,* 73 N. J. L. 529, especially pages 533 and 534. It is there held that a tax of one dollar was reasonable. *Vansant* v. *Stage Co.,* 59 Md. 330-335; *Jackson* v. *Newman,* 59 Miss. 385; *Livingston* v. *Paducah,* —— Ky. 656; *St. Louis* v. *Grone,* 46 Mo. 574; *Commonwealth* v. *Boyd,* 188 Mass. 79; *Caddock* v. *Day,* 4 L. R. A. 809; *Austin* v. *Murray,* 16 Pick. 126; *Hawkins* v. *Mangum,* 78 Miss. 97.

The real issue in this case is not whether the legislature has the right to pass regulatory measures, but whether as a matter of fact the legislature of Mississippi did so in enacting the law under review. *Taylor* v. *Pine Bluff,* 34 Ark. 603; *Memphis* v. *Express Co.,* 102 Tenn. 336; *Matthews* v. *Jansen,* 21 Utah, 207; Cooly on Taxation (3d Ed.) p. 1141; *Kiow Co.* v. *Dunn,* 21 Cols. 185; *State* v. *Ashbrook,* 48 L. R. A. 265; Black's Constitutional Law (2d Ed.), sec. 167, p. 396.

In addition to the many cases I have already cited in this brief, I refer the court to Black's Constitutional Law (2d Ed.), p. 373, where I find a statement of the province of courts in determining whether the police power has been exceeded. The author says, "But they must have

some relation to these ends? Under the mere guise of police regulations personal rights and private property cannot be arbitrarily invaded and the determination of the legislature is not final or conclusive. If it is an act for the purpose of health and thereby destroys or takes away the property of citizens or interferes with his personal liberties, then it is for the courts to scrutinize the act and see whether it really relates to and is appropriate to promoting the public health. It matters not that the legislature may in the title of the act or its body declare that it is for the improvement of public health. Such a declaration does not conclude the courts and they must yet determine the fact declared and enforce the supreme law. The author also quotes from *Mugler* v. *Kansas,* 123 U. S. 623, already cited by me.

The province of the court to adjudge whether a statute really comes within its avowed objects is so well settled that I shall forbear further comment on this feature of the case, but content myself with citing volume two, Digest U. S. Supreme Court Reports, p. 2116, sec. 181a, where the authorities are collected.

*The case of People* v. *Walsh,* 96 Ill. 232, cited by counsel is not at all in point. In that case, the question was the right of the state to control or to relinquish control of highways, and the court held that the legislature could transfer control of driveways to park commissioners.

The other case, *Fletcher* v. *Dixon,* 107 Md. 420, deals with the validity of a regulation requiring automobiles to turn out of the road and stop when a horse becomes frightened. I concede that the state has a right to pass such a regulation for the use of the road as may be deemed necessary, but the Act of 1912 makes no attempt at regulation.

While I grant that the legislature has the right to place motor vehicles in a class and levy certain fees, though it may be an unjust discrimination in levying such fees only against four-wheeled motor vehicles, thus leaving out the

motorcycle, equally as dangerous, though I shall not stress this point, but I do insist that the act is void because it entirely excepts a 40-horsepower automobile from any fees whatever and is thus class legislation and void. I deny also that the state has a right to levy a property tax on automobiles as a class and therefore that if this tax is what our contention is, to-wit, a tax on the ownership of property, then the act is clearly void and class legislation. I contend also that it is double taxation if it is a revenue measure and is in fact, though not in name a property tax. It can only be upheld as a registration fee incident to regulation, or a fee which might have been levied for road purposes. We are not concerned with the privilege or occupation taxes, for by its very terms, it is not such a tax nor is it in lieu of such a tax.

The statute imposing a license tax will in cases of doubt be construed most strongly against the government and especially where the tax is highly penal. In the case at bar, the statute is highly penal. It makes the failure to procure from the auditor a pair of tags a misdemeanor and imposes a heavy fine or jail sentence, yet there is nothing in the title indicating that there is such a provision in the body of the act. See *Levee Board* v. *Insurance Co.*, 96 Miss. 832. Penal statutes must be strictly construed, and the courts can neither add to nor take from them. *Stewart* v. *State*, 95 Miss. 672; *State* v. *Austin*, 23 So. 34; *McInnis* v. *State*, 52 So. 634; *Stafford* v. *State*, 44 So. 801. The function of the supreme court is to pronounce the law on penal statutes and not to enlarge their scope to meet what it may think to be the gravity of the particular offense. *Hatton* v. *State*, 92 Miss. 651.

SMITH, C. J., delivered the opinion of the court.

This is an appeal by the state from an acquittal of appellee in the court below for the alleged violation of "an act to provide for the numbering and registration of au-

tomobiles owned and operated in the state of Mississippi, and to provide for the payment of a registration fee, and being chapter 108 of the Laws of 1912.'' The cause was submitted to the court upon an agreed statement of facts, without a jury, and the statute was held to be unconstitutional and void.

The attorney-general does not attempt to uphold this statute under the state's taxing power, but, on the contrary, emphatically declares that it is not, and cannot be construed to be, a revenue measure, but is a police regulation merely, and as such is valid. Counsel for appellee contend that it is void even as a police regulation, for the reason that it is such an unreasonable and arbitrary exercise of governmental power that its enforcement would result in depriving the citizen of his property without due process of law.

Under its police power the state has the undoubted right to regulate the use of its highways, included in which is the right to compel the registration and numbering of automobiles before they are permitted to be used on the highways. Such registration and numbering is necessary, in order that automobiles may be readily identified, so that speed and other regulations may be enforced, and the rights of all parties using the highways may be protected. Under this power the expense incident to a valid police regulation may be imposed upon the owner of the property or thing out of which the necessity for the regulation arises, but the expense thus imposed ''must be a reasonable, proper and fair exaction, when considered with reference to the object to be attained and surrounding facts.'' McGehee, Due Process of Law, 341. Any clearly unnecessary expense imposed is unreasonable, and its imposition is an arbitrary exercise of governmental power.

The only regulation contained in this statute is that automobiles be registered and numbered. The expense necessary to be incurred by the state in registering and

numbering an automobile is less than one dollar; but the amount it desires to collect, in order that it may be reimbursed therefor, varies from five dollars to twenty-five dollars, according to the horsepower of the engine by which the automobile is propelled.

It follows, from these views, that the statute is void under the due process clause of the state and federal Constitutions.

*Affirmed.*