CHARLIE DAVIS, *Plaintiff in Error*, v. THE STATE OF FLORIDA, *Defendant in Error*.

Opinion Filed June 28, 1923.

A Writ of Error to the Circuit Court for Okaloosa County; A. G. Campbell, Judge.

*T. R. James,* for Plaintiff in Error;

*Rivers Buford,* Atorney General, and *M. C. McIntosh,* Assistant, for the State.

PER CURIAM.—The judgment herein of conviction of murder in the second degree is affirmed on the authority of Phillips v. State, 62 Fla. 77, 57 South. Rep. 341; Andrews v. State, 65 Fla. 377, 61 South. Rep. 975; Secs. 2812, 2903, 2904, Rev. Gen. Stats. 1920; Joyner v. State, decided at this term; Lewis v. State, 84 Fla. 466, 94 South. Rep. 154; Shuler v. State, 84 Fla. 414 93 South. Rep. 672; Breen v. State, 84 Fla. 518, 94 South. Rep. 383; Daniels v. State, 57 Fla. 1, 48 South. Rep. 747; Hall v. State, 78 Fla. 420, 83 South. Rep. 513; White v. State, 84 Fla. 677, 95 South. Rep. 113.

Affirmed.

TAYLOR, C. J., AND WHITFIELD, WEST AND TERRELL, J. J., concur.

ELLIS AND BROWNE, J. J., dissent.

BROWNE, J.—Dissenting.

Charlie Davis and Evie Russell were jointly indicted for the murder of one A. Peacock. Davis was convicted and Russell acquitted. Davis moved the court to grant him a severance and a separate trial, because 'his defense would be self defense, and that of Evie Russell an alibi; that all of the testimony that would be introduced against Russell would be heresay evidence as to Davis, and greatly pre-

judicial to him, and that he could not get a fair and impartial trial, if tried jointly with Russell.'

That this motion should have been granted is evidenced by the testimony adduced on the trial, and the result showed it was highly prejudicial to the defendant Davis.

In an effort to impeach some of the witnesses who testified in behalf of Russell, testimony was adduced to the effect that he held the deceased while Davis cut his throat. It is true the court instructed the jury that this testimony could only be considered by them as affecting the credibility of the witnesses, but we cannot escape the conclusion that the jury regarded it as substantive testimony against Davis and considered it in determining his guilt, because there is absolutely no substantive testimony to warrant a verdict of murder in the first or the second degree against Davis.

There was no eye witness to the killing. Prior to his trial Davis gave the same account of the affair as he did when on trial. He acknowledged the killing, but claimed it was done in self defense. The surrounding facts and circumstances corroborate his testimony.

Peacock, the deceased, had been living with a woman, and Davis who had very recently come into the neighborhood and been to her house on several occasions was told by Peacock to stop coming there.

On the night of the killing Davis with several women, including Peacock's woman, were out walking and met Peacock. The testimony is uncontradicted that when Peacock came up, Davis who was walking alongside of the woman dropped away from her; Peacock called him back and told him to "come on back and get with her, you was with her before, come on." Davis who was no doubt afraid and had reason to be, refused, when the deceased said:

"Yes, God damn you, you is going to come back and get with her."

. Jealousy is one of the most dangerous of human passions. Negroes dread its consequences. The language used by Peacock, even in cold print is menacing. As uttered by a jealous man, it no doubt struck terror into the heart of him who was the cause of it, and he "broke and run." Peacock sicked his dog on him and ran after him. It was night; Davis stumbled and fell over a log, and before he could get up while on his hands and knees, Peacock was on top of him, crushed him to the ground and belabored him. In the scuffle, Peacock said, "I am going to fix you." Davis says that Peacock reached in his pocket for a knife, and a knife was found in his hand.

Rejecting the testimony of the knife, or that Peacock attempted to get his knife out, it is uncontradicted that the fatal wound was inflicted during a fight in which the defendant was down on the ground and the deceased on top, beating him. If self defense was not fully established, the crime was undoubtedly reduced to manslaughter. That there was a struggle on the ground at the scene where the fatal wound was inflicted is conclusively established. A tobacco box and matches belonging to the defendant, fell out of his pocket and were found on the ground where the affray took place.

Dr. Stephens says the wound began just a little to the left of the center of the back of the neck and extended to the right to about the point of the chin.

The defendant says that he was on the ground with the deceased on top of him. In this position if he reached upwards with the razor in his right hand and made the cut, it would have been inflicted as the doctor described it.

No motive for the killing, other than that given by the. defendant, appears from the testimony. There is no evi-

dence of bad blood between these parties, unless the bitterness of jealousy on the part of the deceased towards the defendant Davis for his attention to his woman, engendered a secret hatred in Peacock's breast against Davis. There is no testimony of any ill will on Davis' part towards Peacock, nor does the testimony disclose any reason for ill will.

There is not only no substantive testimony to support a verdict of murder in the first or second degree, but there is no circumstantial evidence to support such a verdict. The testimony offered for the purpose of impeaching the credibility of some of the defendant Russell's witnesses, to the effect that Russell held Peacock while Davis cut his throat, was rejected by the jury, else Russell could not have been acquitted.

It was undoubtedly that testimony—as there was no other—that caused the jury to convict Davis, and it is well settled that such testimony cannot be used as substantive testimony to establish guilt. Upon this point, this court has said: "The State may contradict its witness when that witness has sworn to material evidence injurious to the State, but it cannot put the witness on the stand, and, having having failed to make proof of a criminating fact, prove its case by the statement of the witness made off the witness stand at any other time and place." Dunagain v. State, 38 Tex. Crim. Rep. 614. Note to Andrews v. State, 42 L. R. A. (N. S.) 747.

Adams v. State, 34 Fla. 185; Olds v. State, 44 Fla. 452; Whorley v. State, 45 Fla. 123; Skinner Mfg. Co. v. Douville, 54 Fla. 251; Cross v. Robinson Point Lumber Co. 55 Fla. 374.

The effect of refusing Davis a severance, was to place before the jury evidence, the sole province of which was to impeach some of the witnesses who testified for his co-

defendant Russell; and this testimony was considered by the jury as substantive evidence to establish the guilt of Davis.

The refusal to grant the severance was error, and the result highly harmful to Davis.

I think the judgment should be reversed.

ELLIS, J., concurs in the above dissenting opinion.