## D. H. HIRSHFIELD V. CITY OF DALLAS.

### (No. 3611.)

APPEAL from Dallas County. Opinion by WHITE, P. J.

*(Transferred from Austin.)*

VICTOR H. HEXTER, counsel for appellant.

A. R. WOZENCRAFT and M. TRICE, counsel for appellee.

§ **177.** *Occupation tax upon ticket broker by municipal corporation; construction of article 8, section 1, of the constitution; extent of power of municipal corporation to license, tax and regulate occupations; case stated.* This appeal attacks the validity of the ordinances of the city of Dallas, under which appellant was convicted in the city court for pursuing the occupation of a ticket broker and scalper without first procuring a license therefor. The ordinances regulating this matter provide: (1) That no person shall pursue the occupation without a license. [Art. 365, City Ordinance.] (2) Article 364 defines the occupation of railway ticket broker, scalper and dealer. (3) Article 365 provides that no person shall engage in such business in the city without paying an annual license fee of $500, said license not to be issued for a less term than one year, and the business to be carried on at one office only. (4) Article 366 requires, as a prerequisite to the issuance of the license, the execution of a bond, with security, by the licensee, in the sum of $1,000, conditioned against losses to purchasers on account of tickets sold, and giving said purchasers the right to sue on said bond to recover damages in the premises.

And (5) article 367 declares a violation of said ordinances to be a misdemeanor, punishable by fine in the city court of not less than $25, and not more than $200, declaring each day a separate offense on which the business was carried on without compliance with said ordinances.

Appellant insists that by said ordinance the city of Dallas taxes an occupation which is not taxed by the state of Texas, and that consequently said ordinance is unconstitutional and void.  Section 100 of the Dallas city charter confers upon the city the power to "license, tax and regulate [certain enumerated occupations] and all other trades, professions, occupations and callings, the taxing of which is not prohibited by the constitution of the state of Texas, which tax shall not be construed as a tax on property."  The constitutional provision invoked by appellant is the latter clause or proviso of section 1, article 8, of the state constitution, which declares that "the occupation tax levied by any county, city or town, for any year, on persons or corporations pursuing any profession or business, shall not exceed one-half of the tax levied by the state for the same period on such profession or business."  The occupation of railway ticket broker or scalper is one which has not been taxed by the state.  But though this be so, as we interpret the constitutional provision, it is not intended to prohibit municipal corporations from taxing, or rather to limit and restrict them in the exercise of their taxing powers to just such occupations as may have been taxed by the state; but, on the other hand, to restrict and limit the amount of tax to be assessed by them upon those occupations which have theretofore been taxed by the state.  If the state has taxed the occupation, then, and only in that event, is the municipal corporation limited in its exercise of the same power as to the same subject-matter, to one-half of the tax levied by the state.  "The general rule that the powers of a municipal corporation are to be construed with strictness is peculiarly applicable to the cases of

taxes on occupations; . . . but, where a discretionary power is conferred, its exercise will not be interfered with, unless it clearly appears to have been abused." [Cooley, Tax'n, p. 387.] As above quoted, the charter power to tax conferred by section 100 upon the city of Dallas embraced "all other trades, professions, occupations and callings, the taxing of which is not prohibited by the constitution of the state of Texas." That special powers conferred upon towns to charge license fees are valid, though the like licenses are not allowed by the general laws of the state, see Woodward v. Turnbull, 3 Scam. 1; Ottawa v. La Salle Co., 12 Ill. 339; Byers v. Olney, 16 Ill. 35, cited in note to Cooley, Tax'n, p. 387. See, also, Davis v. State, 2 Tex. App. 425; Ex parte Slaren, 3 Tex. App. 662; Ex parte Gregory, 20 Tex. App. 211. Under the power granted by the charter we are of the opinion the city had the power to tax said occupation, notwithstanding it was not one of the occupations taxed by the state, the right to do so not being limited, restricted nor prohibited by the constitution.

In this view of the case, we are further of opinion that the city was empowered not only to exact a reasonable license fee and license for the purpose of regulating the occupation under its police power, but to impose, if it desired to do so, a reasonable tax, for purposes of revenue, on the pursuit of the occupation. In this case as in Ex parte Gregory, 20 Tex. App. 211, "the grant of power to the municipality by its charter is the twofold power to license and to tax. The rule which obtains in such case sustains the constitutionality of such provisions, 'unless there is some specific limitation on the authority of the legislature in this respect.'" We have seen there was no such limitation in this case. Then, having the power to lay a tax for the twofold purpose of regulation and revenue, the only question is, was the tax as imposed valid? Mr. Cooley says: "A tax laid for the double purpose of regulation and revenue must

be grounded in both the police and taxing power; but the grant of a power to tax would not authorize the imposition of a burden in its nature and purpose prohibitory." [Citing Ex parte Burnett, 30 Ala. 461; Cooley, Tax'n, p. 11.] Again he says: "If a revenue authority is conferred upon a municipality, the extent of the tax, when not limited by the grant itself, must be understood to be left to the judgment and discretion of the municipal government, to be determined in the usual mode in which its legislative authority is exercised; but the grant of authority to impose fees for the purposes of revenue would not warrant their being made so heavy as to be prohibitory, thereby defeating the purpose." "Moreover, in fixing upon the fee, it is proper and reasonable to take into the account, not the expense merely of direct regulation, but all the incidental consequences that may be likely to subject the public to costs in consequence of the business licensed. In some cases, the incidental consequences are much the most important, and indeed are what are principally had in view, when the fee is decided upon." [Id., pp. 408, 409.]

Power to tax for revenue seems to be limited in amount of tax only by the nature and character of the occupation sought to be taxed, viz., the extent to which the occupation may be injurious to the public. Some occupations are so injurious that a tax prohibitory entirely would be justifiable. Others may or may not be injurious, owing to the manner in which they are carried on or pursued, and the abuses which may flow from them. Of this latter class is, we take it, the business of a railway ticket broker or scalper. Mr. Tiedeman, in his invaluable work on Limitations of Police Power, says: "Of late years statutes have been enacted in several states, notably Indiana and Pennsylvania, which prohibit the sale of railroad tickets except by the authorized agents of the railroads and *bona fide* purchaser of an unused ticket, or portion of a ticket, the object of the

statutes being to put an end to the business of the so-called 'scalpers' or 'brokers,' and the Pennsylvania statute makes it compulsory upon the railroad company to redeem an unused ticket, or portion of a ticket. It has been held in both states that the law was constitutional. In both cases the law was justified as a measure for the prevention of fraud upon the railroads and upon purchasers. . . . It is not contended that the business of ticket brokerage is in itself of a fraudulent character. . . . It is only claimed that in its prosecution the business presents manifold opportunities for the commission of fraud. As has already been stated, the police regulation of an employment may extend to any length that may be necessary for the prevention and suppression of fraud in its pursuit, but an honest man cannot be denied the privilege of conducting the business in an honest and lawful manner, because dishonest men are in the habit of practicing gross and successful frauds upon those with whom they have dealings. If that were a justifiable ground for abolishing any business, many important, perhaps some of the most beneficial, employments and professions could be properly prohibited. . . . The business of a ticket brokerage does afford many opportunities for fraud and deceit,, and it may, on that account, be placed under strict police surveillance. But the business serves a useful end when honestly conducted, and the constitutional liberty of the ticket broker is violated when he is prohibited altogether from carrying on his business." [Tied. Lim., pp. 292, 293.] We have seen that the one-hundredth section of the Dallas city charter gives the city the right to "license, tax and regulate" all such occupations. The cases of In re Wan Yin, 22 Fed. Rep. 701; Ash v. People, 11 Mich. 347, and Van Hook v. City of Selma, 70 Ala. 361, do not apply. In the case in hand, the city had the right to tax the occupation.

The only remaining question to be determined is, Does

the tax imposed — to wit, $500 — upon the occupation of a railway ticket broker or scalper amount to a prohibition of the pursuit of such occupation on account of the excessive nature and exorbitancy of said fee or tax? There was testimony adduced in the case to the effect that the fee "was more than enough to regulate the business;" "that the ticket-broker business did not require near so much regulating as the saloon business." Two ticket brokers testified "that such a fee or tax would have the effect of prohibiting such business." This latter evidence is not contradicted. If it is true, then the tax amounted to an absolute prohibition of an occupation the pursuit of which was beyond the power of the corporation to prohibit, the occupation not being *per se* injurious to the public. We are constrained, in the attitude in which the case is presented to us, by the uncontradicted and unimpeached evidence adduced at the trial, to hold that the ordinance is void, because it is in excess of the power of the city council, and prohibits the pursuit of an occupation which any citizen would have the right to pursue, under reasonable tax restriction and regulation. If the ordinance is invalid the conviction in this case is illegal. At all events it is against the evidence.

December 6, 1890.         Reversed and remanded.