[No. 8204.]

## THE PEOPLE EX REL. v. KENNEHAN, AUDITOR.

1. AUDITOR—*Duty to Audit and Adjust Against the State, for which No Appropriation Is Made*—Under Rev. Stat. sec. 6239 whenever a claim against the state, recognized by law, and for which no appropriation has been made, is presented to the auditor, it is his duty to audit and adjust it and when approved by the governor and attorney general, to give the claimant a certificate thereof.

2. ——*Expenses of National Guard*—The pay of the officers and enlisted men serving in the field, under the orders of the governor, to prevent the violation of the laws of the state, and their subsistence and transportation, are reognized by law, within the meaning of the statute.

3. APPROPRIATION—*What Is*—An appropriation, within the meaning of section 33 of article V of the constitution is the setting apart, by legislative authority, of a particular sum of money for a particular purpose.

4. ——*Continuing Appropriation*—Considering that by Rev. Stat. sec. 4409 no limit is set to the amount which may be paid to the members of the National Guard or for their transportation, quarters, subsistence, medical attendance, etc., and that no provision is elsewhere made as to these matters, that there is no provision of law from which any designated amount can be computed as set apart for the purposes mentioned in the section, *Held*, it was not to be construed as a continuing appropriation.

It was therefore the duty of the auditor to audit and adjust claims presented to him for the pay and expenses of the National Guard upon duty, under the orders of the executive.

5. SUPREME COURT—*Original Jurisdiction*—The auditor of state having refused to audit and adjust claims presented to him for the pay, subsistence, transportation, and other expenses of the National Guard serving in the field under the orders of the governor, for the preservation of order, and the prevention of violence, *held*, that the question being one of a public nature, affecting the whole state, the court would assume original jurisdiction of a petition by the governor, in his official capacity, for mandamus, to compel the auditor to act.

6. MANDAMUS—*Relator*—Where an officer of the executive department refuses to perform a duty imposed upon him by statute, and in the performance of which the public are interested, the governor is the proper party to institute, as relator, proceedings by mandamus to compel him to act, when the performance of the duty by the officer refusing is necessary before the governor can discharge a duty imposed upon him.

7. *Officer Assuming Inconsistent Positions*—A public officer against whom mandamus is sought, to compel him to perform a public duty, will not be heard to both deny the duty, and assert that he is ready and willing to perform that duty.

*Original Proceeding in Mandamus.*

Hon. Fred Farrar, Attorney General, Mr. Francis E. Bouck, Deputy Attorney General, Mr. Norton Montgomery, Assistant Attorney General, for The People.

Mr. William H. Malone and Mr. William H. Scofield, attorneys for respondent.

Chief Justice Musser delivered the opinion of the court.

By permission of this court, there was filed by the attorney general a petition entitled *"The People of the State of Colorado, on the relation of Elias M. Ammons, as governor of the State of Colorado, v. Roady Kenehan, as auditor of state"* for an original writ of mandamus. Upon the filing of the petition, an order was made for the issuance of an alternative writ directed to the auditor. In this alternative writ it was alleged that the relator is the governor, charged by the constitution and laws with the duty of enforcing the laws and maintaining the peace of the state; that he is the commander-in-chief of the military forces, and by the constitution and laws vested with the power of calling out the military forces to execute the laws and preserve good order in the state; that the respondent is the auditor; that there arose in the counties of Huerfano and Las Animas a condition of great violence and lawlessness, growing in force and extent until it was beyond the control of the peace officers of these counties; that property was destroyed, human life deliberately and violently taken, and that the sheriffs of the aforesaid counties repeatedly in-

formed the relator of their inability to restore law and order, and appealed to him as chief executive for assistance in executing the laws and suppressing violence; that thereupon the relator investigated the conditions existing in the said counties, and deeming that the situation so demanded, issued an executive order to the adjutant general, authorizing and directing him to call into service and hold in readiness for immediate mobilization and action, and to mobilize, as many of the members of the National Guard of the state, in and near the Arkansas Valley, as may be necessary to maintain peace and good order in said counties; that thereafter, finding that conditions demanded further action, the relator, with the approval of the attorney general, made and issued to the adjutant general an order directing that officer to order out and assume command of such troops of the National Guard as in his judgment might be necessary to restore and maintain peace and order in said counties and to enforce obedience to the constitution and laws of the state; that pursuant to the said orders, parts of the military forces of the state were prepared, mobilized, and placed and kept in the field for the purpose of executing the laws, and preserving and restoring peace and order in the said counties, and that in the judgment of the relator such action was and is necessary to the preservation of the laws, and maintaining peace and order in the state; that the indebtedness incurred for expenses necessarily caused by these military movements includes the payrolls of officers and members of the National Guard of the state, the necessary transportation, medical attendance, and supplies, quarters and subsistence, for which numerous claims for money exist against the state, and that no funds are available for the payment of the same; that the respondent has declared, and still declares, that he will not issue any certificates of indebtedness for and on account of any of the said claims unless

ordered by a court so to do; that he has refused and still refuses to audit or adjust certain of said claims though the same have been presented to and examined by him; that among the claims which the auditor refuses to audit and adjust was the payroll of Company A of the Second Regiment of the National Guard; that the payroll contains the claims of the officers and men of that company, at the statutory rate of compensation, and that the same is true and correct and entitled to allowance by the auditor; that unless the lawful expense of the military forces called out by the governor be promptly met by the auditor and adjustment of the claims arising therefrom and by the issuance of certificates of indebtedness therefor, the executive branch of the state government will be irretrievably weakened, and the integrity and sovereignty of the state imperiled and impaired, the military forces demoralized, and anarchy substituted for the execution of the laws; that the refusal and delay of the auditor was regardless of both the rights of the claimants, and of the necessities of the state; that the unsettled conditions in the counties referred to still continue and may continue for a long period to come, and in the judgment of the governor it will be necessary for some time to keep military forces in the field for the purpose of executing the laws and restoring and maintaining peace and good order throughout the state; that certificates of indebtedness can be negotiated at par if promptly issued; that if the respondent persists in his present refusal and delay, the state government will not only be weakened and endangered, but the faith and credit of the state will be jeopardized, and it will be impossible for the state to obtain services or commodities except at a much higher price, if at all, than would otherwise be the case, and large sums of money will consequently be lost to the state and uselessly wasted unless this court shall see fit to command respondent to do his duty. The claims for

money now existing against the state for the payroll of Company A, and to various individuals and firms for transportation, subsistence and supplies necessary, are set out and it is alleged that the said claims are just and correct and that the attorney general and governor have at all times stood ready, and they now stand ready, to approve of each and all of them, and of all other just claims for money heretofore or hereafter arising because of the military operations had for the purposes of executing the laws and restoring and maintaining the peace and good order of the state. It is alleged that the governor has no plain, speedy or adequate remedy in the ordinary course of law, and that the exigencies of the case require immediate and final action by this court through the extraordinary process of mandamus.

The alternative writ required the auditor to proceed forthwith promptly, and without unnecessary delay, to audit and adjust the claims described in said petition, as well as all other claims that may be presented for audit and adjustment in connection with the use and movement of the military forces as set forth, and when such claims have been found to be correct and when they have been approved by the governor and by the attorney general, to issue promptly, and without unnecessary delay, certificates of indebtedness therefor, or to show cause, on a day named, why he should not do so.

To this alternative writ, the respondent made return. In the opinion of the court this return is not such as to put in issue any of the material facts alleged which are necessary to a determination of the questions involved. Such allegations of the return as it may be necessary to specifically mention will be noticed at the proper time in this opinion. The return in effect is a demurrer to the alternative writ, and was in effect so treated by the respondent in the oral argument and in his brief.

This action is brought to compel the auditor to act in and to proceed with the discharge of his duties as set forth in section 6239 Rev. Stat. 1908, which, so far as is material to this case, is as follows:

"In all cases where the laws recognize a claim for money against the state, and no appropriations shall have been made by law to pay the same, the auditor shall audit and adjust the same, and when the said claim shall have been approved by the governor and attorney general, he shall give the claimant a certificate of the amount therefor, under his official seal if demanded, and shall report the same to the general assembly, with as little delay as possible, giving a statement in tabular form of the number, date of issue, and amount of each certificate, and for what purpose issued."

Under this section, if a claim is one which the laws recognize as a claim for money against the state, and no appropriation has been made to pay such claim, it is then the duty of the auditor to act and to proceed with the discharge of his duties as set forth in the section. The first question to be determined is, are the claims which have been presented to the auditor for audit and adjustment under that section, such as are recognized as claims for money against the state? Second, if they are such claims, has any appropriation been made by law to pay them?

Section 4409 Rev. Stat. 1908 is as follows:

"Officers and enlisted men when serving under the orders of the governor or of a sheriff, mayor or judge, to prevent violation of the laws of the state, or to prevent or suppress riot or insurrection or to repel or prevent invasion, shall, until such time as other provision is made for the payment for the services rendered, receive pay out of the general fund of the state at the following rates: All commissioned officers shall receive the same pay as is paid to the United States army officers of like grade, less 20 per cent. Sergeant-majors, quarter-

master-sergeants and hospital stewards shall be paid the sum of two dollars and forty cents per day for the first twenty days' service: First Sergeants and acting hospital stewards, two dollars and thirty cents per day for the first twenty days' service: Sergeants, two dollars and twenty cents per day for the first twenty days' service: Corporals, two dollars and ten cents per day for the first twenty days' service, and privates two dollars per day for the first twenty, days' service. After twenty days' service one dollar less per day for each of the above mentioned non-commissioned officers and privates. The necessary transportation, medical attendance and supplies, quarters and subsistence, shall also be provided for them and a reasonable allowance shall also be made for animals necessarily used."

The claims mentioned in the alternative writ are claims for the pay of officers and enlisted men serving in the field, under the orders of the governor, to prevent violation of the laws of the state and to prevent or suppress riot, and claims for transportation, supplies and subsistence for such officers and men so engaged. It is plain that these claims are such as are recognized by law, to-wit, the very section last above quoted, as claims for money against the state. This much is conceded in the return of the auditor. It is, however, contended by him that an appropriation has been made by law to pay such claims, and, as is evident from his return and brief, this contention is the real reason for his refusal to proceed in the discharge of his duties under section 6239. If no appropriation has been made out of which these claims may be paid, then we take it from the return and brief of the auditor, he concedes that he should proceed in the discharge of his duties as outlined in that section. The contention is that section 4409, quoted above, makes a continuing appropriation of so much of the general fund of the state as may be necessary to pay claims of

the character of those under consideration. If by that section an appropriation has been made out of which the claims may be paid then the auditor is justified in his refusal to proceed under section 6239. On the other hand, if that section does not make an appropriation for the purpose of paying such claims, the auditor is not justified in refusing to proceed, for there is no other law or section passed by the general assembly, or anything in the constitution making an appropriation for the purpose of paying such claims.

Section 33 of article V of the constitution provides that, "No money shall be paid out of the treasury except upon appropriations made by law, and on warrant drawn by the proper officer in pursuance thereof." This section needs no construction. It construes itself. No exception is made whatever, nor is there anything in the constitution to be read in connection with that section that will permit any money to be paid out of the treasury, except upon appropriations made by law and on warrant. This much must also be taken from the return and brief as conceded by the auditor. If we examine section 4409, by which the auditor contends an appropriation was made, out of which these claims may be paid, it is found that there is no limit to the amount of money which may be paid to the officers and enlisted men of the militia, and for the necessary transportation, medical attendance, supplies, quarters and subsistence. It may be ten thousand dollars, or it may be one million dollars, so far as that section is concerned. It may be a part of the general fund, or all of the general fund. The mere fact that pay for the officers and enlisted men is fixed for one day does not fix the amount that may be expended for the purposes contemplated by section 4409. How many days are the officers and men to be paid for? How many officers and men will there be to pay? How much is to be paid out for transportation, medical at-

tendance, supplies and subsistence? There is nothing
in the section or in any other law of this state that an-
swers these questions. There is nothing from which any
designated amount can be computed as having been set
aside for the purposes mentioned in the section.

The amount which may be thus expended in mili-
tary operations is left by the section altogether indefi-
nite and uncertain. In *The Institute, Etc. v. Henderson,*
18 Colo. 98, 31 Pac. 714, 18 L. R. A. 398, several acts of
the general assembly were before the court. The one
provided bounties for the destruction of wolves, coyotes,
bears and mountain lions. Another provided a premium
for planting trees. And still another provided a pre-
mium for digging up loco or poison weed. The acts pro-
vided how and from what fund the bounties were to be
paid, and fixed the amount to be paid for the destruc-
tion of each of the animals, for the planting of one hun-
dred trees, and the amount for each pound of weed dug
up. While the court decided the case upon other
grounds, it said that it was doubtful if these bounty stat-
utes complied with the clause of the constitution requir-
ing an appropriation for the payment of money. In *In-
gram v. Colgan,* 106 Colo. 113, 38 Pac. 315, 39 Pac. 437,
28 L. R. A. 187, 46 Am. St. 221, the remarks of this court,
in the 18th Colo., relative to permitting the disburse-
ment of an indefinite amount of money, as was contem-
plated by the bounty acts, were quoted with approval,
and in that case the California court held that the bounty
act did not make an appropriation. The act provided
that five dollars should be paid out of the general fund
of the state treasury to any person who should kill or
destroy a coyote. The court said that the fund from
which the bounties were to be paid was explicitly desig-
nated, but the amount of money in the general fund de-
voted to the payment of these bounties was not specified.
The court said that the language of the act lacked the

first essential to an official appropriation, and that was
to fix the amount that should be paid for bounties. In
*State v. Moore,* 50 Neb. 88, the court, after a long dis-
cussion of the history of appropriations and the mean-
ing of the word "appropriate," said, on page 96 [69 N.
W. 373, 376, 61 Am. St. 538]:

"Having in view the origin and history of appro-
priations as well as the general lexicographic meaning
of the word, to 'appropriate' is to set apart from the
public revenue a certain sum of money for a specified
object, in such manner that the executive officers of the
government are authorized to use that money, and no
more, for that object and for no other."

The Nebraska court had under consideration a stat-
ute providing for the payment of a bounty of a certain
amount a pound upon each pound of sugar manufac-
tured, and providing that when any claim arose under
the act the secretary of state should approve the same
and certify it to the auditor who should draw a warrant
upon the treasurer for the amount due thereon. The
court held that the act did not make an appropriation.

In *Ristine v. The State,* 20 Ind. 328, the court had
under consideration an act relating to the payment of
interest upon the state debt. The constitution of Indi-
ana had a provision similar to ours, that no money
should be paid from the treasury except in pursuance of
appropriations made by law. After a discussion of the
history of appropriations, the court said:

"Appropriation, as applicable to the general fund
in the treasury, may, perhaps, be defined to be an au-
thority from the legislature given at the proper time, and
in legal form, to the proper officers to apply sums of
money out of that which may be in the treasury, in a
given year, to specified objects or demands against the
state."

In Nevada there was an act that provided that it

was the duty of county commissioners in any county in which public arms, accouterments or military stores were had or should thereafter be received, for the use of the militia, to provide a suitable and safe armory, and that all claims for the expense of procuring and maintaining armories should be audited and approved by the board of military auditors and presented to the state comptroller, who should draw his warrant upon the state treasurer for the amount, and, upon presentation of the warrant, the state treasurer should pay the same out of the general fund. Such expenses were limited to not exceed $75.00 per month for any company. In *State v. La-Grave*, 23 Nev. 25, 41 Pac. 1075, 62 Am. St. 764, it was contended that fixing the maximum amount to be paid each company and directing the comptroller to draw his warrant and the treasurer to pay it constituted an appropriation, but the court said:

"These matters alone do not accomplish that end. To constitute an appropriation there must be money placed in the fund applicable to the designated purpose. The word appropriate means to allot, assign, set apart or apply to a particular use or purpose. As appropriation in the sense of the constitution means the setting apart a portion of the public funds for a public purpose."

And on page 27, the court said:

"Under existing facts it is improbable that the provisions of the statute were intended as an appropriation, because the number of military companies that could have received its benefits was indefinite and uncertain." And the court held that no appropriation was made.

In *Clayton v. Berry*, 27 Ark. 129, it appears that there was in the constitution of Arkansas a provision similar to ours, making necessary an appropriation, and the court said:

"The expression, 'appropriated by law,' means the act of the legislature setting apart, or assigning to a particular use, a certain sum of money to be used in the payment of debts or dues from the state to its creditors."

In *McCauley v. Brooks,* 16 Cal. 11, it is said:

"To an appropriation within the meaning of the constitution, nothing more is requisite than a designation of the amount and the fund out of which it shall be paid."

It is to be observed that each of the foregoing definitions includes a designation of a certain amount as being set apart, allotted or assigned for a specified purpose, as a requisite to constitute an appropriation. Special emphasis is laid upon the necessity of fixing a specific amount in an appropriation in the case of *Leddy v. Cornell,* 52 Colo. 189, 120 Pac. 153, 38 L. R. A. (N. S.) 918, Ann. Cas. 1913c, 1304, wherein this court said:

"By no process of reasoning can it be held that the words of the act above quoted, considered in the light of the whole act, show a clear, or any, purpose on the part of the legislature to create a continuing appropriation. Something more than a mere duty to pay must be shown. The act itself does not fix the specific amount which the secretary is to receive, but merely places a limit beyond which no legislature in the future may go, until the act is amended, in making appropriations for its payment. No definite amount as salary is fixed by the act, and the legislature was without information as to what it might be. Indeed, the commission is not directed by the statute to appoint a secretary at all, but has power to do so should there be occasion. A secretary might never have been appointed and a salary might never have been required. In view of these facts, how can it fairly be said that the legislature created a continuing appropriation?' The situation being thus uncertain, at the time the act

was passed, as to the amount of the salary, or as to whether there would ever be necessity for a salary, under the authorities cited it will not be assumed that a continuing appropriation by the legislature was created to cover its payment."

This court, while upholding the doctrine of continuing appropriations in *Re Continuing Appropriations*, 18 Colo. 192, 32 Pac. 272, said:

"When such appropriations are for the whole, or for a definite part of a certain special fund, we are of the opinion that they furnish sufficient authority for the disbursement of such fund."

The case of *Sweeney v. Commonwealth*, 118 Ky. 912, 82 S. W. 639, is cited by respondent as supporting his contention. That decision does not appear to be based on any constitutional provision requiring appropriations for the payment of money. The decision is based solely on the terms of a statute. Indeed the court says that the cases from Indiana, Arkansas and California, which we have cited above and which were made under constitutional provisions like ours, were not applicable in the Kentucky case. If that was so then that case is not applicable here.

It is claimed in the brief of the auditor that in his return he denied that he refused to audit and adjust the claims, and alleged that he would do so as expeditiously as his time would permit. The substance of the allegation in the alternative writ is that he has refused to proceed under section 6239. In his return and in his brief he has taken the position that it is not his duty, and that it would be unlawful for him to proceed under that section. He will not be permitted to take these inconsistent positions to enable him to escape the order of a court if such order should be made. He cannot be heard to say that it is not his duty, and that it would be unlawfull for him to proceed under that section, and, at the

same time, assert that he is ready and willing to proceed thereunder as expeditiously as his time will permit. His real position is that he will not even commence to act under section 6239, because, as he asserts, that section is not applicable. Under such circumstances, there is no question before us about what discretion he may have after he proceeds to act under that section. His position is a refusal to act thereunder at all. With this his real position plainly in view, there can be no question of the right and authority of the court to order him to act, if it is his duty so to do.

Inasmuch as it appears from what has been said that the claims are such as are recognized by the laws of this state and that no appropriation has been made by law to pay the same, it is the plain duty of the auditor to proceed therewith under that section.

It is the contention of the respondent that this is not a case that will warrant this court in exercising the original jurisdiction given it by the constitution. The case of *Wheeler v. The Northern Colorado Irrigation Co.,* 9 Colo. 248, 11 Pac. 103, is referred to as denying the right of the court to assume jurisdiction in this case. We think on the contrary, that that case makes it the imperative duty of this court to exercise its original jurisdiction. In that case it is said, speaking with reference to the original writs which the constitution empowers this court to issue:

"We believe that original jurisdiction of the writs mentioned except in cases presenting some special or peculiar exigency, should not be here assumed, save where the interest of the state at large is directly involved; where its sovereignty is violated, or the liberty of its citizens menaced; where the usurpation or the illegal use of its prerogatives or franchises is the principal, and not a collateral question."

And on page 256, [11 Pac. 107], it is said:

"Cases of which this court should take original cognizance, directly involving, as in general they must, questions of public right, should be brought in the name of the people. The state or the public being the main party in interest, although individual advantage may be gained, the person instituting the proceeding should appear as relator. It is also eminently fitting that such causes be inaugurated before this court by the attorney-general, or with his consent, or, at least, that the refusal of that officer to act be shown. But we do not declare such consent or refusal absolutely necessary. If the main object of the proceeding is to vindicate a public right, to protect the interest of the state in its sovereign character, to prevent the illegal use of a public franchise as against the people generally, or a considerable portion thereof, or if it be to subserve the public interest in any of the other matters heretofore mentioned, a citizen could probably institute the proceeding in the name of the people without consulting the attorney-general."

It is thus seen that when a case involves a question of a public nature, one that affects the whole state, or its government, or the administration of its affairs as this one does, then unquestionably it is the duty of this court to assume original jurisdiction and to issue such writs as it is empowered to do for the purpose of giving the relief demanded. It is not necessary to enter upon any lengthy discussion of the public nature and character of the matters involved in this action. It affects directly the military arm of the government in the field. The peace and order of the state are at stake. The whole state is interested in having peace and good order preserved within its entire borders. That this is a case of *publici juris* cannot be denied.

The contention is also made that the governor is not the real party in interest; that he is not beneficially interested, and that therefor this action cannot be main-

tained. It is true that private interests of claimants are involved, but the paramount interest is the interest of the state. It involves the pay for its military and the maintenance thereof in times of disorder and violence. The governor is the commander-in-chief of this military and is charged with the duty of supplying it with subsistence and in paying the men as the statute provides. Our constitution in section 2 of article IV, says: "The supreme executive power of the state shall be vested in the governor who shall take care that the laws be faithfully executed." Section 1 of article IV names the officers constituting the executive department of the state, headed by the governor, and including among others the auditor. As it is the express duty of the governor to see that the laws be faithfully executed and to perform the other duties mentioned, who is more directly interested in seeing that the officers of the executive department, of which he is the supreme head, shall execute the duties imposed upon them by law, when the performance of those duties is necessary before the governor can properly discharge the duties imposed upon him? Furthermore, it is the duty of the governor, under this very section 6239, to act upon these claims after they have been audited and adjusted by the auditor. How can he perform his duty in this behalf unless the auditor performs his? Surely he has the right to call to his aid the power of a court under such circumstances as exist here. In the 26 Cyc., at page 398, it is said:

"State officers may bring mandamus to compel the performance of official duties falling under their supervision, or the performance of which is necessary to enable them to perform their duties."

Furthermore, these claims, when audited and adjusted by the auditor and approved by the attorney general and governor, must be reported to the general assembly, and the general assembly should then provide

for their payment. The adjustment by the auditor and the approval by the governor and attorney general will be evidence to the general assembly of the justness of these claims at a time perhaps when the evidence concerning them has been lost or cannot be readily found. The general assembly has thus provided a means by which these claims may be passed upon by certain officers of the state when the time of their accrual is recent and the evidence concerning them is fresh. Here is a duty devolving upon these three officers of the executive department, which they owe not only to the people of the state, but to the general assembly itself. This is a law of the state. It was no doubt the intention of the general assembly that the law be executed, and there is no one more interested as an official to see that this law is executed for the benefit of the general assembly than the governor, upon whom is cast the duty of seeing that all laws are executed.

Thus it has been seen that it is the plain duty of the auditor to proceed with these claims as provided in section 6239. Let the alternative writ be made peremptory.

*Decision en banc.*