#### ATKINS v. STATE HIGHWAY DEPARTMENT. (No. 5942.)

(Court of Civil Appeals of Texas. Austin. Feb. 6, 1918. On Motion for Rehearing, Feb. 27, 1918.)

1. STATUTES ⟨⟩205 — CONSTRUCTION — INTENT.

The intent of a statute must be determined from a construction of all of its provisions.

2. LICENSES ⟨⟩7(1)—MOTOR VEHICLES—REVENUE MEASURES.

Acts 35th Leg. c. 190, and chapter 207, as amended at First Called Session 35th Leg. c. 31, together establish a state highway department, create a state highway commission, provide for the registration of motor vehicles, and declare that motor vehicles shall not be operated or driven on the public highways without having displayed thereon number plates bearing the registration number assigned to such vehicle by the highway department. The acts provide for the payment of fees for licenses, and authorize the highway commission to expend such fees in the construction of roads. Held, that the Legislature has the power to provide for such use of the funds, leaving the expense of policing, regulating, and administering the law in regard to the use and operation of motor vehicles on the highways to be paid out of other funds, and the fact that the proceeds of licenses are to be used in constructing roads, does not render the license provisions a tax.

3. CONSTITUTIONAL LAW ⟨⟩48 — REASONABLENESS OF LICENSE FEE—PRESUMPTION.

As there was nothing in the law itself showing that the license fees were excessive and unreasonable, and there was no evidence to support such conclusion, it must be presumed that the fees prescribed were neither excessive nor unreasonable.

---

⟨⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. LICENSES ☞7(1)—REVENUE MEASURE.**

That the fees collected under the acts would produce a sum 12 times the amount necessary for registration, regulation, policing, and administration of the law with respect to motor vehicles does not show that the registration fees prescribed were taxes, for the license was required as a condition precedent to the exercise of the privilege of operating motor vehicles on the highways.

**5. CONSTITUTIONAL LAW ☞42 — RIGHT TO QUESTION STATUTE.**

One who has no interest in the subject of a statute and is not injuriously affected by its provisions cannot question its constitutionality.

**6. STATUTES ☞64(8)—PARTIAL INVALIDITY.**

As section 27 declares that if any section, subdivision, or clause of the act shall be unconstitutional, such decision shall not affect the validity of the remaining portions of the act, the possible invalidity of the provision of Acts 35th Leg. c. 190, § 16, that the state highway department shall formulate rules for determination of weights governing license fees established for commercial vehicles, does not invalidate those provisions of the section imposing license fees on noncommercial vehicles according to horse power.

**7. STATES ☞131—APPROPRIATIONS.**

In view of long-continued past construction of Const. art. 8, § 6, declaring that no money shall be drawn from the treasury except in pursuance of specific appropriations made by law, Acts 35th Leg. c. 190, § 23, declaring that all funds coming into the hands of the state highway commission, derived from registration fees prescribed for motor vehicles, or from other sources, shall be deposited with the state treasurer to the credit of a special fund designated as the "state highway fund" is a valid appropriation, though not, of course, specifying the amounts to be realized; similar provisions for contingent amounts having long been recognized as valid appropriations.

**8. LICENSES ☞7(2) — UNIFORMITY — MOTOR VEHICLES.**

License fees for the operation of motor vehicles may be fixed according to horse power, regardless of Const. art. 8, §§ 1, 2, requiring uniformity of taxation and forbidding the assessment of property for taxes elsewhere than in the county where it is situated; for such sections relate to the ordinary ad valorem taxes, and not to license taxes or fees.

**9. CONSTITUTIONAL LAW ☞48 — CONSTRUCTION FAVORING VALIDITY.**

An act of the Legislature should not be declared unconstitutional unless it clearly appears to be so, and every reasonable doubt as to its validity must be resolved in favor of sustaining the act.

### On Motion for Rehearing.

**10. STATUTES ☞64(8)—PARTIAL INVALIDITY.**

Though Acts 35th Leg. c. 190, § 16, prescribing fees for private motor vehicles and for commercial vehicles according to capacity, and allowing the state highway department to formulate rules for the determination of weights governing license fees established for commercial vehicles, is invalid as to the last provision as an unauthorized delegation of legislative power, the invalidity of that provision does not affect the license fees already prescribed by the act for commercial vehicles, but merely deprives the commission of authority to change them.

**11. STATUTES ☞64(8)—PARTIAL INVALIDITY.**

As the license fees on motor vehicles provided by Acts 35th Leg. c. 190, would, if not validly appropriated, be covered into the state treasury and await appropriation by some future Legislature, the provisions for collection of the fees cannot be attacked on the ground that there was no valid appropriation.

**12. STATUTES ☞119(3)—VALIDITY—TITLE OF ACT.**

The provision of the caption of Acts 35th Leg. c. 190, that fees and charges should constitute part of the fund for the support of the state highway commission is sufficient, under Const. art. 3, § 35, declaring that no bill shall contain more than one subject, which shall be expressed in its title, to warrant an appropriation of the fees and charges for the use of the state highway department.

Appeal from District Court, Travis County; Geo. Calhoun, Judge.

Suit by. P. S. Atkins against the State Highway Department. From a judgment for defendant, plaintiff appeals. Affirmed.

R. B. Humphrey, of Austin, for appellant. B. F. Looney, Atty. Gen., and C. W. Taylor and C. M. Cureton, Asst. Attys. Gen., for appellee.

JOHNSON, Special Chief Justice. This suit was instituted by appellant against appellees in the district court of Travis county, Tex., on the 7th day of July, 1917. Appellant alleged in his petition that he was the owner of an automobile, or motor vehicle, of Cadillac manufacture, rated at 32 horse power; that appellees were threatening and attempting to collect from him the sum of $5.60, as a so-called license or registration fee to cover the period of time ending December 31, 1917, and for furnishing him a plate, or plates, seal, etc., to be used by him under orders of appellees, as a means of identifying said automobile; that unless restrained by the court, appellees would compel him to pay said license or registration fee, and later a sum amounting to $11.20 on the 1st day of January each year thereafter, so long as he might own and operate said automobile, to his irreparable damage in the sums stated. He further alleged that appellees were threatening and attempting to collect said sum of money from him under the provisions of two certain acts of the regular session of the Thirty-Fifth Legislature, namely, chapters 190 and 207 of the published laws, as amended at the first called session of the Thirty-Fifth Legislature (chapter 31). He alleged the unconstitutionality of the acts mentioned, and of certain provisions thereof, as will hereinafter be noted. He prayed for a writ of temporary injunction, which was refused by the district court, and the cause is now properly before this court for revision.

For convenience we will hereinafter refer to said laws simply as chapter 190 and chapter 207. These two acts are so nearly related, each in part covering the same subject-matter, and in part the one beginning where the other left off, that they may, and should, be treated as one act, and especially so as they were both passed at the same session of the Legislature.

Chapter 190 establishes a state highway department, and creates a state highway commission. It comprehends a complete coordinated system of public highways throughout the state, as well as in the several counties of the state; assistance and advice by the department to counties is required, and co-operation between the department and county officials in the construction of roads is provided for; the state highway engineer is required to prepare, under the direction and approval of the commission, a comprehensive plan providing a system of state highways, and it is made the duty of the commission to advance the construction of such state highways; state aid to counties in the construction of roads is provided for; funds for public road construction appropriated by the United States government, shall be expended under the supervision of the state highway department, and in order to provide funds to effectuate the provisions of the act, every owner of one or more motorcycles or motor vehicles is required to file in the office of the state highway department an application for registration of each motorcycle or motor vehicle owned or controlled by him, and to pay the requisite fee therefor.

The registration fee prescribed for each motorcycle is $3; for each motor vehicle of the kind owned by appellant, as described in his petition, 35 cents per horse power, no motor vehicle to be registered for less than $7.50, and graduated fees are prescribed according to weight in pounds per wheel for commercial vehicles. Upon registration of the vehicle the owner is furnished with a certificate of registration, and without additional cost, a distinguishing seal and also two number plates for a motor vehicle and one for a motorcycle. A manufacturer of, or dealer in, such vehicles may obtain a general distinguishing number and seal upon payment of a fee of $15.

All funds coming into the hands of the highway commission, derived from registration fees, or from other sources, are to be expended by the highway commission for the furtherance of public road construction and the establishment of a system of state highways in the various ways prescribed in said act.

Chapter 207 contains additional provisions with reference to the application for registration of motor vehicles and motorcycles, and sets forth many rules and regulations governing the operation of such vehicles upon the public highways. These various provisions are too numerous to mention, and it will be sufficient to say that they comprise a complete code covering the entire subject-matter usually found in police measures relating to the operation of such vehicles on the public highways.

[1-4] The main question involved in this case is set out in appellant's third assignment of error, which is as follows:

"The trial court erred in holding that the tribute sought to be collected from appellant by appellees for the state is a registration fee and not a tax."

We will consider in connection with this assignment, appellant's fourth assignment of error, which is as follows:

"The trial court erred in holding that the registration fee, if it is a registration fee, is not excessive and unreasonable in amount."

Appellant urges that the acts here involved levy the tribute solely and absolutely upon the ownership of the vehicle, and for the declared purpose of raising revenue, and therefore it is a tax, and not a registration or license fee for the privilege of the operation of motor vehicles upon the public highways. It is true that under section 16, chapter 190, every owner of one or more motorcycles or motor vehicles is required to file application for registration for each motorcycle or motor vehicle owned or controlled by him, and that each application shall be accompanied by the requisite fee, and it is also provided in that section that such is required "in order to effectuate the provisions of this act." Section 19 is practically to the same effect in so far as making application by the owner is concerned, and if this were all to be considered in connection with the matter, there would be reasonable grounds for appellant's contention that the tribute is laid on the ownership of the vehicle. But we must look to the whole law, to all of its provisions, to ascertain its meaning and intent.

Summarizing from the various provisions of the acts, we find it more than once declared that motor vehicles and motorcycles shall not be operated or driven on the "public highways" without having displayed thereon the number plates bearing the registration number assigned to such vehicle by the highway department; that it shall be unlawful to operate or drive such vehicle upon the "public highways" without having displayed thereon the distinguishing seal; that manufacturers of, or dealers in, motor vehicles, wishing to show or demonstrate such vehicles on the "public highways," may apply for and secure a general distinguishing number and seal; that the registration fee required to be paid becomes delinquent upon the operation of the vehicle upon the "public highways" without the registration fee having been paid; and that the highway department shall forthwith revoke the license to operate a motor vehicle on the "public highways," in case of arrests and convictions for certain offenses. The law may not be skillfully drawn, but, considering all of its provisions, it seems fairly clear that the fees imposed are for the license, or privilege, of operating motor vehicles and motorcycles upon the public highways of the state. It may be noted here that D. E. Colp, secretary of the state highway commission, a witness for appellees, testified as follows:

"It is my understanding that the highway commission cannot tax an automobile unless it

goes on the road or street. You might own a car and leave it in the garage ten years and they cannot fine you, because they have to catch you on the road."

That is our understanding of the law. No penalty is denounced against the owner for failure to make application for registration of his vehicle, or for failure to pay the registration fee. He is amenable to the law only when he operates or drives his motor vehicle or motorcycle on the public highways of the state without the number plates and seal which evidence his compliance with the law in having registered his vehicle, paid the requisite fee and secured a license authorizing him to operate his motor vehicle or motorcycle on the public highways.

As previously stated, it is true that in section 16 it is provided that, "in order to effectuate the provisions of the act," owners are required to register their motor vehicles and motorcycles and pay the prescribed fees, and it may be said that the main purpose of the act is the construction of roads. There is, however, the other purpose, treating the two acts as one, that of regulating the use and operation of motor vehicles and motorcycles on the public highways of the state.

It may be conceded that the funds derived from the payment of registration fees are to be expended in the construction of roads. The law so provides, but that does not necessarily make it a revenue measure in the sense and with the effect contended for by appellant. There is no inhibition in the Constitution against the Legislature making such provision, and therefore it had the power to provide for such use of the funds, leaving the expense of policing, regulating, and administering the law in regard to the use and operation of the vehicles upon the highways, to be paid out of other funds by the state, or by the counties, as in other cases.

The evidence in this case clearly establishes the fact that the license fees collected will constitute but a small portion of the funds needed to carry out the proposed system of roads. It also just as clearly establishes, without contradiction, the fact that motor vehicles are very injurious to roads, as well as also shows that good roads contribute to the utility of automobiles; that they make a great saving in tire cost, repairs, gasoline, and lubricating oil, and that automobiles last from a third to a half longer when used over good roads, and that good roads contribute to safety in the operation of automobiles. In fact, appellant himself testified:

"I am engaged in the garage business and repair automobiles. I guess it is a fact that the sorrier the roads are the more money I make."

A license fee for the privilege of operating motor vehicles over improved public highways, commensurate with the injury done to such roads and the benefits received from them, would not, it seems to us, be excessive and unreasonable. There is no evidence in this case as to the money value of such in-

jury and such benefits, and therefore we cannot say that the prescribed fees are excessive and unreasonable, and we are forced to rely upon the view taken by the Legislature upon that question. In other words, there being nothing in the law itself which shows said fees to be excessive and unreasonable, and there being no evidence to support such a conclusion, we must presume the fees not to be excessive and unreasonable.

Appellant also urges that the fees collected under said acts produce a sum 12 times the amount required for registration, regulation, policing and administration of the law, and that such a tribute is a tax, and not a registration fee. We find in the evidence that which tends to show that the administration of the entire law will probably cost about $75,000 per year, and the estimated receipt from registration fees about $1,394,000. We understand this evidence, however, relates to the administration of those provisions of the law relating to construction of roads, and not to the cost of policing and regulating the operation of motor vehicles. Holding as we have that the Legislature had the power to provide for the use of these funds as it did, leaving the cost of policing, etc., to be paid out of other funds, and there being no inhibition in the Constitution against the Legislature raising funds for the construction of public highways by imposing a license fee upon motor vehicles for the privilege of using such highways, the fact that such fees exceed the cost of policing, etc., if they do, would not render such fees a tax.

We therefore conclude that the sum of money which appellant is required to pay under the laws here involved is not a tax on ownership, but a license fee for the privilege of operating his automobile on the public highways of the state, and that the fees as prescribed in said laws to be paid for such privilege are not excessive and unreasonable. We deem it sufficient to cite the following authorities: Brown v. City of Galveston, 97 Tex. 1, 75 S. W. 488; Ex parte Gregory, 20 Tex. App. 219, 54 Am. Rep. 516; Hirshfield v. City of Dallas, 29 Tex. App. 242, 15 S. W. 124; Re Kessler, 26 Idaho, 764, 146 Pac. 113, L. R. A. 1915D, 322, Ann. Cas. 1917A, 228; 25 Cyc. 599; Ex parte Hoffert, 34 S. D. 271, 148 N. W. 20, 52 L. R. A. (N. S.) 949.

Aside from the Texas cases above cited, we think the Hoffert Case, supra, is strong authority in support of the validity of the acts we have under consideration. It involved the constitutionality of the "automobile law" of South Dakota. The act imposed an annual fee of $6 on all motor vehicles used upon the public highways. The fee was to be paid to the county treasurer, who was required to forward 12½ per cent. thereof to the secretary of state, while the remaining 87½ per cent. was to be placed in the "county motor vehicle fund," to be expended only

for the repair and maintenance of the public highways beyond the limits of cities and towns. Hoffert, who was applying for discharge on a writ of habeas corpus, made no complaint of the 12½ per cent. of the fee, conceding it to be a license fee proper. He contended that, so far as the 87½ per cent. was concerned, the act was a pure revenue measure, and to that extent the Legislature had attempted to exceed the constitutional limitation—that it amounted to double taxation. The validity of the act was upheld by the Supreme Court of South Dakota.

Appellant cites the case of State v. Lawrence, 105 Miss. 58, 61 South. 975; Id., 108 Miss. 291, 66 South. 745, Ann. Cas. 1917E, 222, on the proposition that the fee here prescribed is a tax, and not a registration fee. This authority does not support him in his contention, but, on the contrary, is against it. An act of the Mississippi Legislature levied a privilege tax on motor vehicles and motorcycles for using the public road, and provided for the registration of such vehicles. The act provided that the privilege tax should be collected by the tax collector of the county and paid into the treasury and credited to the road and bridge fund, and be used by the supervisors in improving, repairing, maintaining, extending, or constructing the roads and bridges of the county.

The court held this to be a tax on the privilege, not on the property, and that constitutional provisions with reference to taxes relate to ad valorem taxes, and not to such license fees. Among other things, applicable to the case in hand, the court said:

"The revenue from this tax is to be used in the building and maintaining of public highways. The Legislature in enacting the law decided that this was proper to be done. The Legislature has full power over the public roads, and can make all needful regulations concerning the use thereof, and can provide means by which they may be improved and kept up. In the present act to provide such means it has declared the use of the roads to be a privilege for which motor vehicles and motorcycles, a class of vehicles accustomed to use the roads, must pay a tax. We know of no restriction upon the Legislature to prevent it from imposing the tax and adopting the method for raising funds to be expended in making good roads."

In Vernor v. Secretary of State, 179 Mich. 157, 146 N. W. 338, Ann. Cas. 1915D, 128, cited by appellant, it was held that the effect of the act was to take motor vehicles of the annual assessment rolls of cities, townships, and villages, and put them on the annual registration list in the office of the secretary of state; that the act showed that the Legislature intended to tax them as articles of personal property, the taxes levied against them being in lieu, and to take the place, of the taxes to which they would otherwise be subject. The court, in this case, cites a number of authorities upon this proposition. "That what is [constitutes] a reasonable fee must depend largely upon the sound discretion of the Legislature, having reference to all the circumstances and necessities of the case. It will be presumed that the amount of the fee is reasonable, unless the contrary appears upon the face of the law itself, or is established by proper evidence."

In the case of City of Henderson v. Lockett et al., 157 Ky. 366, 163 S. W. 199, also cited by appellant, a license fee of $5 for each automobile of not exceeding 20 horse power, $10 for each automobile of from 20 to not exceeding 30 horse power, and $15 for each automobile exceeding 30 horse power was upheld. In this case it was also held that what is a reasonable fee is a question of fact, and as we understand it, such fact must be proved.

[5, 6] Appellant's first assignment of error is as follows:

"The trial court erred in holding that the Legislature may delegate legislative power to the state highway department."

Three propositions are asserted under this assignment: The power to change a tax rate is solely and exclusively a legislative power; that the Legislature cannot delegate purely legislative powers; and that the power to change the rate of a registration fee is solely and exclusively a legislative power. That part of the law complained of in this respect is a portion of section 16 of chapter 190, which reads as follows:

"The state highway department shall formulate rules for the determination of weights governing license fees established herein for commercial vehicles; these rules and rates fixed by this section for commercial vehicles may be changed by the state highway department."

This section defines the term "commercial vehicle" as follows:

"A commercial vehicle within the terms of this act, shall be one carrying passengers or freight for hire."

Appellant's contention is that that portion of the law above quoted seeks to authorize the state highway department to change the rates fixed by said section 16, and that if the department may change the rates it amounts to the fixing of the rates, thus superseding the Legislature in the discharge of that duty. If it were held that said section 16 is unconstitutional in the respect mentioned, we think it would still leave a complete workable law remaining. Appellant's counsel admits as much in argument, and, in fact, section 27 of the act provides that:

"If any section, subdivision or clause of this act, shall be held to be unconstitutional, such decision shall not affect the validity of the remaining portions of this act."

It will be observed that that portion of section 16 complained of relates alone to commercial vehicles. Appellant's petition does not show that he owns a commercial vehicle. The amount which he alleges he is called on to pay is not the registration fee fixed for a commercial vehicle, but is the fee fixed for the other class of vehicles mentioned in said section. In his testimony upon the trial of the case, he stated:

"This car I have referred to is my private car. It is not used, except incidentally, in connection with my garage business; it is used for the purpose of personal conveyance."

He has not alleged or shown that the highway department is attempting or threatening to change the rules and rates fixed by said section. We cannot, therefore so far as this case is concerned, see any necessity for passing on the question raised by this assignment, and we decline to do so. Besides, the law is well settled that one who has no interest in the subject of a statute, and is not injuriously affected by its provisions, cannot attack its validity. City of Newport v. Merkel Bros. Co., 156 Ky. 580, 161 S. W. 549, citing Burnside v. Lincoln County Court, 86 Ky. 423, 6 S. W. 276.

[7] Appellant's second assignment of error is as follows:

"The trial court erred in holding that the Legislature may make a specific appropriation of public moneys without naming the maximum amount to be drawn from the state treasury thereunder."

Appellant's proposition under this assignment is to the effect that under section 6 of article 8 of the state Constitution, which provides that no money shall be drawn from the treasury, but in pursuance of specific appropriations made by law, one of the essential elements of an appropriation is the naming of a certain, fixed, and definite sum of money, the maximum amount which may be expended thereunder, a certain sum ascertained and stated and capable of definitive exhaustion, and that any attempted appropriation of public moneys which does not name in dollars or dollars and cents the maximum amount of money which may be drawn from the treasury thereunder is in conflict with the section of the Constitution above mentioned. Counsel for appellant states in argument that the form of the appropriation is sufficient, if it had merely stated an amount beyond which no expenditure could be made. We proceed then on the theory that the appropriation is good, except that it does not name in dollars, or dollars and cents, the maximum amount which may be drawn from the treasury thereunder. Section 23 of chapter 190 provides that:

"All funds coming into the hands of the highway commission, derived from the registration fees hereinbefore provided for, or from other sources, as collected, shall be deposited with the state treasurer to the credit of a special fund designated as the 'state highway fund,' and shall be paid [out] only" in the manner provided in the act and for purposes stated.

Appellant cites in support of his contention, the following authorities: Dickinson v. Clibourn, 125 Ark. 101, 187 S. W. 909; Ingram v. Colgan, 106 Cal. 113, 38 Pac. 315, 39 Pac. 437, 28 L. R. A. 187, 46 Am. St. Rep. 221; Norfolk Beet-Sugar Co. v. Moore, 50 Neb. 88, 69 N. W. 373; State v. La Grave, 23 Nev. 25, 41 Pac. 1075; State v. Holmes, 19 N. D. 286, 123 N. W. 884; People v. Kennehan, 55 Colo. 589, 136 Pac. 1033; State v. Eggers, 29 Nev. 469, 91 Pac. 819, 16 L. R. A. (N. S.) 630.

In Dickinson v. Clibourn, supra, the appropriation was very similar to that in the present case, but it was shown that the Constitution of Arkansas provides that:

"No money shall be drawn from the treasury except in pursuance of specific appropriation made by law, the purpose of which shall be distinctly stated in the bill; and the maximum amount which may be drawn shall be specified in dollars and cents; and no appropriation shall be for a longer period than two years."

It was held that the appropriation was not made in accordance with the constitutional requirement. The Texas Constitution does not contain the provision requiring the maximum amount to be stated in dollars and cents.

In each of the other cases cited, the appropriation was for an uncertain and unlimited amount against the general fund. In every one of them, what was said in the case of People v. Kennehan, supra, applies with equal force:

"It may be a part of the general fund, or all of the general fund."

We have no such case in the one in hand. Here is appropriated all of the funds coming from certain sources, which, as collected, are deposited with the state treasurer to the credit of a special fund designated as the "state highway fund." No other money in the state treasury can be touched for the purposes stated in the acts here in question. No greater amount than that deposited in said fund can be used for said purposes. The case of Ristine v. State, 20 Ind. 328, also cited by appellant, discusses fully the essentials of a valid appropriation, and, among other things, the court said:

"An appropriation may be made in different modes. It may be made by an act setting apart and specially appropriating the money derived from a particular source of revenue to a particular purpose. Our swamp land act is of this character."

We think the construction which the Legislature has placed upon the Constitution (section 6, art. 8) is of much force, if not controlling, in determining the validity of the appropriation here complained of. 6 R. C. L. 63; Fire Association v. Love, 101 Tex. 376, 108 S. W. 158, 810.

At the first session of the Legislature after the adoption of the present Constitution, said section being an original one therein, an appropriation was made of the "entire available school fund, annually derived from all sources, including the poll tax and one-fourth of the general revenue" for the support of the public free schools for the years 1877 and 1878. Continuously since that time, similar appropriations have been made by nearly every Legislature for the support of the public schools, for the University and for the Agricultural and Mechanical College, down to and including the Thirty-Fifth Legislature, 1917. In 1899, the Twenty-Sixth Legislature (chapter 156) appropriated for

the penitentiaries "all proceeds of convict labor." In 1901, the Twenty-Seventh Legislature (chapter 85) appropriated all proceeds of sales of the farm and dairy products, surplus stock, and worn-out property to maintain and support the Agricultural and Mechanical College. In 1917, the Thirty-Fifth Legislature appropriated the proceeds of all convict labor on farms and elsewhere, and all other proceeds of the penitentiary system and of all other sources connected therewith, or so much thereof as may be necessary, for the maintenance and support of the penitentiary system, including buildings, etc., and required that said funds be deposited with the state treasurer and paid out as provided in articles 6188 and 6192, R. S. 1911.

Appropriations, such as the foregoing, appearing in the various appropriation bills enacted since 1876, are far too numerous to mention, and are clearly conclusive as to the construction placed by the Legislature upon the section of the Constitution mentioned. The several Governors of the state have approved such appropriations, the comptrollers have drawn warrants against them, and the treasurers have paid such warrants, all without question as to the validity thereof.

We think the Legislature had the power to make the appropriation, here involved, in the manner that it did, and we hold that the provisions of the act in regard thereto constitute a valid appropriation of the funds mentioned to and for the purposes stated in the act. It is not to be understood, however, that we hold the appropriation good for a longer term than two years. This statement is made in view of section 6, art. 8, of the Constitution which provides, "nor shall any appropriation of money be made for a longer term than two years."

[8] Appellant's fifth assignment of error is that:

"The trial court erred in holding this tax, if this is a tax, may be levied on any other basis than in proportion to value."

His sixth assignment is that:

"The trial court erred in holding that property may be assessed for taxation and the taxes paid elsewhere than the county where such property is situated."

His contention is that the former is prohibited by section 1, art. 8, of the Constitution, and the latter is prohibited by section 11, art. 8, of the Constitution. Those sections of the Constitution relate to ordinary ad valorem taxes, and not to license taxes, or fees, such as we have found the fees here involved to be. Besides, authorities are numerous to the effect that license fees for the operation of automobiles may be fixed according to the horse power. Huddy on Automobiles, § 63c; Cleary v. Johnston, 79 N. J. Law, 49, 74 Atl. 538; Bozeman v. State, 7 Ala. App. 151, 61 South. 604; Schuler's Case, 167 Cal. 282, 139 Pac. 685, Ann. Cas. 1915C, 706; In re Kessler, 26 Idaho, 764, 146 Pac. 113, L. R. A. (N. S.) 1915D, 322, Ann. Cas. 1917C, 228; City of Henderson v. Lockett, 163 S. W. 199; Hendrick v. Maryland, 235 U. S. 610, 35 Sup. Ct. 140, 59 L. R. A. 385. Our own courts have upheld license fees based upon the number of animals to the vehicle. Kissinger v. Hay, 52 Tex. Civ. App. 295, 113 S. W. 1005; Brown v. Galveston, 97 Tex. 1, 75 S. W. 488.

[9] We have recognized the importance of the questions raised by appellant in this case, but in their consideration we have been unable to keep out of mind the often repeated doctrine that an act of the Legislature should not be declared unconstitutional unless it clearly appears to be so, and that every reasonable doubt as to its validity must be resolved in favor of sustaining the statute. Viewing the whole case as we do, we cannot say that the acts complained of by appellant are in conflict with the provisions of the Constitution as he contends, and therefore the judgment of the district court must be, and is hereby, affirmed.

### On Motion for Rehearing.

[10] Appellant, in his motion for rehearing, urges error in our declining to pass on his first assignment of error, and complains of the following statement contained in our opinion:

"The amount which he alleges he is called on to pay is not the registration fee fixed for a commercial vehicle, but is the fee fixed for the other class of vehicles mentioned in said section."

It is contended that:

"The charge for private vehicles and for commercial vehicles hauling passengers is exactly the same."

We cannot agree to that construction of the law. The fees fixed for commercial vehicles, where the carrying capacity ranges from 1,001 pounds per wheel to 10,000 pounds per wheel, are graduated according to the prescribed weight in pounds per wheel, and other fees are prescribed for commercial vehicles of greater carrying capacity. These fees apply to commercial vehicles of the classes mentioned, whether engaged in carrying passengers or freight. The fee for motor vehicles other than those mentioned above is 35 cents per horse power. If a particular vehicle of this class is engaged in carrying passengers or freight for hire, it is a commercial vehicle, the fee is 35 cents per horse power, and the law says that the rate fixed for commercial vehicles may be obtained by the state highway department. If it is a private vehicle, that is, not a commercial vehicle, the fee is the same, but the law does not give the highway department power to change the rate fixed for this class of vehicles. Appellant's automobile is of this latter class, and therefore the fee chargeable against it is not subject to change by the highway department.

Appellant's counsel admits it to be the law that one who has no interest in the subject

of a statute, and is not injuriously affected by its provisions, cannot attack its validity (for additional authority, see Sweeney v. Webb, 33 Tex. Civ. App. 324, 76 S. W. 766), but he argues appellant's interest, and that he may be injuriously affected, by asking the question, "Can the clause authorizing the department to fix or change the 35 cent rate be separated from the 35 cent rate?" He urges the necessity of our passing upon the question upon the contention that if the section were held unconstitutional the 35 cent rate would be destroyed. That would be true if the entire section should be held unconstitutional, but if only the provision giving the Highway Department power to change the rate fixed for commercial vehicles should be held invalid, it would simply deprive the department of the power to change such rates, leaving the fees to be collected as fixed by the statute. We are unable to see the necessity of passing upon the question so far as this case is concerned.

Error is urged in our overruling appellant's second assignment of error, wherein he called in question the validity of the appropriation of the funds derived from the collection of license fees. Referring to the Ristine Case, cited in our opinion, complaint is made that we apparently overlooked the final, vital declaration of the court, which is quoted as follows: "If the section had specified a fixed sum," etc.—and a similar partial quotation is contained in his brief. We are inclined to think that counsel for appellant did not exactly catch the import of the sentence from which he quoted only a part. The Indiana court had under consideration an act which provided for payment: First, the ordinary expenses of the state; next, the interest on the state debt; and finally, the principal of the debt. The court held it to be a pledge, and not an appropriation, and in discussing the matter, showing that there could be no payment of interest until after payment of the state's expenses, used the following language, a portion of which was quoted as above shown:

"If the section had specified a fixed sum which might be applied to the expenses of the state, as it would have done had it intended to make an appropriation, especially from year to year, for all time, then the officers could have known, at July, whether there was money in the treasury to meet other and later appropriation for interest," etc.

Thus it will be seen that these words, simply argument of the court, only show that, because no fixed sum had been stated for the expenses of the state, it was impossible for the officers to determine whether there was any money available for interest until after the state's expenses had been paid.

[11, 12] It is urged for the first time in the motion for rehearing that the caption of chapter 190 does not contain any mention of any appropriation of the funds of the state highway department for the support of said department. The caption provides "that such fees and charges shall constitute a part of the fund for the support of the state highway department." Even if this should not be sufficient as an inclusion of the appropriation in the caption, and if appellant's other contentions were sound, rendering the appropriation invalid, we conclude, as we might well have said, in our original opinion, that such invalidity would not affect the matter of the collection of the fees. In the absence of an appropriation, which would be the case under such circumstances, the funds derived from the collection of the fees would be covered into the state treasury and await appropriation by some future Legislature. We are not disposed, however, to adopt that as a proper disposition of the question. As previously shown, one of the provisions of the caption is "that such fees and charges shall constitute a part of the fund for the support of the state highway department." In order to carry this provision into effect it was necessary to provide in the act for such use of the funds. Any provision calculated to carry the declared object into effect is unobjectionable, although not specifically indicated in the title. Johnson v. Martin et al., 75 Tex. 33, 12 S. W. 321; Snyder v. Compton, 87 Tex. 377, 28 S. W. 1061. For numerous other authorities, see Rose's notes, vol. 3, p. 1097. The act is not objectionable as being in conflict with section 35, art. 3, of the state Constitution.

The other matters mentioned in the motion for rehearing are, we think, sufficiently covered in our original opinion. We see no reason why we should not adhere to our former conclusions. The motion for rehearing is overruled.

Motion overruled.

KEY, C. J., disqualified.