

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

June 5, 1975

The Honorable Bob Bullock
Comptroller of Public Accounts
State Finance Building
Austin, Texas

Dear Mr. Bullock:

Opinion No. H- 622

Re: Effect on the Comptroller's
certification of the general
appropriations bill of omission
of a page of the bill.

You have asked our opinion on five questions involving the Comptroller's ability to certify Senate Bill 52, the General Appropriations Bill enacted by the 64th Legislature. The questions arise from a clerical error which occurred before the bill was enrolled and resulted in the omission of a page. The omitted page appears at page III-82 of the conference committee report on Senate Bill No. 52.

As we understand the facts, page III-82 was mistakenly omitted from one copy of the conference committee report while the report was being prepared. Three copies of the report were filed in the House of Representatives and three copies were filed in the Senate. Page III-82 was contained in all three copies of the report filed in the House and in two of the three reports filed in the Senate. Both houses adopted the report. Unfortunately, the copy used by the enrolling room in preparing the enrolled version of the bill was the one copy which did not contain page III-82. Shortly before the adjournment sine die of the Legislature, the Lieutenant Governor and the Speaker signed the enrolled copy in the presence of the Senate and the House of Representatives respectively. The error was discovered after the bill was delivered to the Comptroller. For easy reference a copy of the missing page as it appeared in five of the six copies of the conference committee report is attached as an appendix to this opinion. We believe this situation constitutes an extraordinary case and our opinion is limited to these facts.

Article 3, section 49a of the Texas Constitution outlines the Comptroller's duty to certify whether sufficient funds exist to cover the amount of an appropriation bill. That section provides in part:

> From and after January 1, 1945, save in the case of emergency and imperative public necessity and with a four-fifths vote of the total membership of each House, no appropriation in excess of the cash and anticipated revenue of the funds from which such appropriation is to be made shall be valid. From and after January 1, 1945, no bill containing an appropriation shall be considered as passed or be sent to the Governor for consideration until and unless  the Comptroller of Public Accounts endorses his certificate thereon showing that the amount appropriated is within the amount estimated to be available in the affected funds. When the Comptroller finds an appropriation bill exceeds the estimated revenue he shall endorse such finding thereon and return to the House in which same originated. Such information shall be immediately made known to both the House of Representatives and the Senate and the necessary steps shall be taken to bring such appropriation to within the revenue, either by providing additional revenue or reducing the appropriation.
> (Emphasis added)

Your first question is:

> (1) Does the obvious omission of Page 82, Article III prevent the bill from being certified to the Governor by [the Comptroller]?

The Comptroller's constitutional duty is to indicate whether "the amount appropriated is within the amount estimated to be available in the affected funds." Thus, if the Comptroller is able to make this determination on the basis of the information in the bill as it was presented to him, then he has sufficient information to make the certification decision. While we are aware of the contents of the missing page we believe your first two questions do not require reference to that page, since in our view all information relevant to the certification process is contained on other pages.

At pages III-172  and III-175  of the enrolled bill, the recapitulation of the total appropriations to the Highway Department is shown as $790, 519, 303 and $816, 825, 138 for fiscal years 1976 and 1977, respectively. The recapitulation also shows that the method of financing this total appropriation is to be accomplished by utilizing $650, 000 and $250, 000 of general revenue funds for the 1976 and 1977 fiscal years, respectively, and utilizing $789, 869, 303 and $816, 575,138 "from other funds" for the respective fiscal years.  On page III-81, the State Highway Fund "other than that money appropriated elsewhere in this Act from the State Highway Fund" is appropriated for State Highway Department purposes.  The State Highway Fund then would be one of the other funds referred to in the recapitulation to be utilized in financing the Highway Department.  On page III-83  of the enrolled bill, the Farm-to-Market Road Fund is appropriated to the State Highway Department.  The amount to be allocated to the Farm-to-Market Road Fund each year is set by statute at $15, 000, 000.  V. T. C.S., art. 7083a,  § 2(4-b).

As the bill presented to the Comptroller contains (1)  the total amount of the Highway Department Appropriation, (2) the amount of that appropriation which is to come from the general revenue fund, (3) the amount which is to come from other funds, (4) the other funds which are to be used, and (5) sufficient information by which the amount to come from each of the other funds can be ascertained, we believe the Comptroller has adequate data to fulfill his constitutional obligation of determining whether "the amount appropriated is within the amount estimated to be available in the affected funds. "

Your second question is:

. . . [S]hould this office take into account the approximately $800 million dollars per year that is not included in the bill in determining whether or not the numerous other appropriation items can be certified?

Although reference is made to the approximately 800 million dollars per year which is on the omitted page, it should be noted that that figure represents a final total of several smaller figures almost all of which appear on earlier pages.  The final totals appear elsewhere in the bill as well, and

thus you should consider them when deciding whether sufficient revenues are anticipated to permit you to certify the bill.   The only appropriations figures which do not appear in complete detail are limited to approximately 5.6 million dollars for the two year period and relate to two programs.

Your third and fourth questions are:

(3) . . . [C]an the Comptroller issue warrants after September 1, 1975 to the Highway Department even though there is no page 82 of Article III in the bill that is certified by this office?

(4) . . . [W]hat document does the Comptroller use to determine the exact appropriations of the Texas Highway Department? . . .

As we have indicated the total amount appropriated to the Highway Department can be easily ascertained without making reference to the missing page.   However, the specific purpose for which approximately 5.6 million dollars is appropriated over the biennium is not clear in the bill presented to you.   Since the funds clearly are appropriated to the Highway Department, and there is pre-existing statutory authority for the Department to expend these funds, we believe that if and when the bill is effective, warrants may be issued and may be spent in fulfilling those statutory responsibilities even though the exact use of certain portions of the funds is not specifically indicated in the bill delivered to you.  See, Attorney General Letter Opinion MS-99 (1953); cf. , Atkins v. State Highway Department, 201 S. W. 226 (Tex. Civ. App. --Austin 1918, no writ); Attorney General Opinion V-1255 (1951).

However, in determining the specific purposes for which the 5.6 million dollars can be spent, the Highway Department and the Comptroller should be guided by the intent of the Legislature and to determine that intent in this case should use the conference committee report which was the document on which the Legislature voted and which clearly contains the missing page. Letter Advisory No. 72 (1973); Attorney General Opinions C-131 (1963); V-1312 (1951); V-1234 (1951).

Because of our answers to your first four questions it is unnecessary to consider your fifth question.

## S U M M A R Y

There is sufficient information in the enrolled copy of Senate Bill No. 52, the General Appropriations Bill for fiscal years 1976 and 1977, for the Comptroller to determine whether to certify the bill. In the issuance of warrants and the expenditure of funds appropriated to the Highway Department, the Comptroller and the Department should be guided by the intent of the Legislature.

Very truly yours,

JOHN L. HILL
Attorney General of Texas

APPROVED:

DAVID M. KENDALL, First Assistant

C. ROBERT HEATH, Chairman
Opinion Committee

S.B. No. 52

## HIGHWAY DEPARTMENT
### (Continued)

| | | |
|---|---|---|
| 7. Travel and Information Service, estimated to be | 2,498,368 | 2,724,271 |
| 8. Gulf Intracoastal Waterway: | | |
| a. For administration of Senate Bill No. 472, Acts of the Sixty-fourth Legislature, Regular Session, 1975 | 100,000 | U.B. |
| b. For purchase of right-of-way, if necessary, in accordance with the provisions of Senate Bill No. 472, Acts of the Sixty-fourth Legislature, Regular Session, 1975 | 300,000 | U.B. |
| GRAND TOTAL, HIGHWAY DEPARTMENT (All funds, Including Sums Certain and Estimated) | $790,519,303 | $816,825,138 |

Method of Financing:

| | | |
|---|---|---|
| State Highway Fund, estimated | $774,869,303 | $801,575,138 |
| Farm-to-Market Road Fund | 15,000,000 | 15,000,000 |
| General Revenue Fund | 650,000 | 250,000 & U.B. |
| Total, Method of Financing, estimated | $790,519,303 | $816,825,138 |

## Schedule of Exempt Positions

|  | 1976 | 1977 |
|---|---|---|
| Commissioners, 3 | $   17,700 | $   18,900 |
| State Highway Engineer | 40,500 | 42,300 |
| Assistant State Highway Engineer, 2 | 31,400 | 33,200 |
| Bridge Engineer | 27,900 | 29,700 |
| Chief Engineer, Highway Design | 27,900 | 29,700 |
| Chief Engineer, Maintenance and Operation | 27,900 | 29,700 |
| District Engineers, 4 | 27,900 | 29,700 |
| Engineer--Manager | 27,900 | 29,700 |
| District Engineers, 21 | 27,400 | 29,200 |
| Construction Engineer | 27,400 | 29,200 |
| Engineer VI, 3 | 26,200 | 28,000 |
| Engineer, Secondary Roads | 27,400 | 29,200 |
| Right-of-Way Engineer | 27,400 | 29,200 |
| Materials and Tests Engineer | 27,400 | 29,200 |
| Engineer-Director, Automation | 27,400 | 29,200 |
| Engineer-Director, Planning and Research | 27,400 | 29,200 |
| Director, Motor Vehicle | 26,800 | 28,600 |
| Director, Finance | 26,800 | 28,600 |
| Director, Equipment and Procurement | 26,800 | 28,600 |
| Personnel and Wage Administrator | 26,800 | 28,600 |
| Director, Travel and Information | 26,800 | 28,600 |
| Director, Insurance | 26,800 | 28,600 |
| Accounts Examiner III | 16,140 | 17,244 |