

# The Attorney General of Texas

August 31, 1979

**MARK WHITE**
Attorney General

Supreme Court Building
P.O. Box 12548
Austin, TX. 78711
512/475-2501

1607 Main St., Suite 1400
Dallas, TX. 75201
214/742-8944

4824 Alberta Ave., Suite 160
El Paso, TX. 79905
915/533-3484

1220 Dallas Ave., Suite 202
Houston, TX. 77002
713/650-0666

806 Broadway, Suite 312
Lubbock, TX. 79401
806/747-5238

4309 N. Tenth, Suite B
McAllen, TX. 78501
512/682-4547

200 Main Plaza, Suite 400
San Antonio, TX. 78205
512/225-4191

An Equal Opportunity/
Affirmative Action Employe

Honorable William P. Clements, Jr.
Governor of the State of Texas
State Capitol
Austin, Texas 78711

Honorable Bill Presnal
Chairman
Committee on Appropriations
House of Representatives
Austin, Texas 78769

Honorable Homer A. Foerster
Executive Director
State Board of Control
LBJ State Office Building
Austin, Texas 78711

Opinion No. MW-51

Re: Authority of the Governor to veto certain provisions of the General Appropriations Act.

Gentlemen:

Representative Presnal has asked if the Governor's action in attempting to veto certain portions of the General Appropriations Act is valid. The Board of Control inquires about the validity of a rider which was the subject of one of the questioned vetoes. The Governor has posed several questions which are to be answered if we find his vetoes are invalid.

The Governor's veto authority is found in article IV, section 14 of the Texas Constitution. In relevant part, it provides:

> If any bill presented to the Governor contains several items of appropriation he may object to one or more of such items, and approve the other portion of the bill. In such case he shall append to the bill, at the time of signing it, a statement of the items to which he objects, and no item so objected to shall take effect. . . .

Thus, the Governor's authority to veto portions of the appropriations bill extends only to "items of appropriation." In determining whether a

portion of the appropriations bill constituted an item of appropriation and was thus subject to veto the Supreme Court recently stated:

> It can be said then that the term 'item of appropriation' contemplates the setting aside or dedicating of funds for a specified purpose. This is to be distinguished from language which qualifies or directs the use of appropriated funds or which is merely incidental to an appropriation. Language of the latter sort is clearly not subject to veto.
>
>     . . . .
>
> If the language is intended to set aside funds for a specified purpose, it is an 'item of appropriation' and is therefore subject to veto by the Governor. Otherwise, the Governor must veto the entire bill or let the objectionable part stand. . . .

Jessen Associates, Inc. v. Bullock, 531 S.W.2d 593, 599 (Tex. 1975).

In a case relied on in Jessen and by the courts of several other states, our Supreme Court stated:

> The only additional authority to disapproving a bill in whole is that given to object to an item or items where a bill contains several items of appropriation. It follows conclusively that where the veto power is attempted to be exercised to object to a paragraph or portion of a bill other than an item or items, or to language qualifying an appropriation or directing the method of its uses, he exceeds the constitutional authority vested in him, and his objection to such paragraph, or portion of a bill, or language qualifying an appropriation, or directing the method of its use, becomes noneffective.

Fulmore v. Lane, 140 S.W. 405, 412 (Tex. 1911). See also Attorney General Opinions M-1199 (1972); V-1196 (1951).

Representative Presnal questions seven specific vetoes. The first portion of the bill which is the subject of a questioned veto provides:

> The Board of Regents of The University of Texas System is hereby authorized to expend such amount of its Permanent University Fund bond proceeds and/or other bond proceeds and such amount of its other available moneys as may be necessary to fund, in whole or in part, alterations and additions to the Sun Bowl

Stadium which is located on the campus of The University of Texas at El Paso.

In all relevant respects the language of this rider is identical to the rider before the Supreme Court in Jessen. See Educ. Code § 61.058. Accordingly, we believe it is beyond question that the Governor had no legal authority to veto this rider, and thus the purported veto has no effect.

Governor Clements asks if the rider violates article VIII, section 6 of the constitution which requires that appropriations be specific. Since the Jessen court concluded that this language did not constitute an independent appropriation, it is not necessary to measure it against the requirements of article VIII, section 6. See also Jessen, supra, at 599-600, n. 8 for a description of types of funds which might be covered under the language of the rider. Discussion of specific appropriations are found in National Biscuit Co. v. State, 135 S.W.2d 687, 693 (Tex. 1940) (it is not necessary that an appropriation designate a certain sum or even a maximum sum to be specific); Atkins v. State Highway Department, 201 S.W. 226 (Tex. Civ. App. — Austin 1918, no writ) (an appropriation of all funds coming from a named source is specific); Attorney General Opinion V-1267 (1951) (appropriation of an uncertain amount of money in a special fund for a named purpose is specific); Attorney General Opinion V-887 (1949) (appropriation of all license fees received under a particular act is specific).

The Governor also suggests that any improvement of the county-owned Sun Bowl with state funds would violate article III, section 51 of the Texas Constitution which provides, inter alia, that the legislature has no power to authorize a grant of public moneys to a municipal corporation. The details of any improvements are not before us so we cannot say that all conceivable projects would be permissible; however, the University of Texas at El Paso is the long-term lessee of the stadium and it may be reasonably anticipated that it will receive substantial benefits from alterations and additions to the facility. Acts 1961, 57th Leg., ch. 13, at 23. If the University receives adequate benefits, it is not prevented from making expenditures which may incidentally benefit the county. Attorney General Opinion H-403 (1974).

The next provision in question is:

(47) The Texas Department of Human Resources is hereby authorized and directed to construct a state office building, in cooperation with the State Board of Control, consisting of NTE 530,000 gross square feet (400,000 net square feet). No General Revenue, Children's Assistance, or Medical Assistance funds may be used for this purpose.

It is the intent of the Legislature that the building house the central administrative offices of both the Texas Department of

Human Resources and the Texas Youth Council. Further, it is the intent of the Legislature that the building be constructed on State land currently owned by the Texas Department of Mental Health and Mental Retardation. The Board of Mental Health and Mental Retardation is hereby authorized and directed to transfer to the State Board of Control record title to a certain triangular-shaped tract of land 29 acres, more or less, in the north part of the City of Austin, bounded on the west by West Guadalupe Street and North Lamar Boulevard, on the north by 51st Street, on the east by Guadalupe Street and having the southern tip of the tract at the intersection of Guadalupe and West Guadalupe Streets, together with all records held by it concerning this tract.

These two paragraphs do not constitute an "item" of appropriation under the test established in Jessen. They do not set aside or dedicate funds. Instead, the language directs and qualifies the use of funds appropriated elsewhere. See Jessen, supra at 599 - 600 (Supreme Court found fact that funds were appropriated elsewhere was significant in determining that the provision was not an item of appropriation and thus was not subject to veto). It prohibits the use of certain categories of funds for construction of this building, and it effectively directs the use of funds appropriated in other portions of the Act. Accordingly, the Governor was without authority to veto this provision.

The Governor asks a series of questions regarding earned federal funds, which it is anticipated will be the source of revenue for the construction of the building listed in the rider. Earned federal funds are generated by reporting state expenditures for services to persons eligible for certain federal programs and by claiming federal matching funds for those services. The earned federal funds are subject to appropriation by the legislature and have in fact been appropriated. See, e.g., art. II, rider (6) at II-52, art. V, § 19. The portion of the appropriations act reflecting the method of financing the Department of Human Resources appropriation indicates that $60,650,000 has been appropriated to the department for the next two years from earned federal funds. This amount reflects only the portion of the department's itemized appropriation coming from earned federal funds. It does not include any funds for the construction of the building; however, all earned federal funds are appropriated by the sixth rider to the department's appropriation. Thus, the amount of earned federal funds the department may spend is not limited to the $60,650,000 shown in the method of financing description. Additional funds in excess of the $60,650,000 appropriation may be spent for the construction of a building within the limits set out in the rider which the Governor sought to veto.

The third provision in question is

The State Board of Control shall establish a maximum and a minimum monthly charge for state employee parking of $16 and $6 respectively for facilities within its jurisdiction. The Board is

authorized to charge varying rates within the above limitations
based upon the type and location of parking space made available
accepted by a state employee.

This provision does not set aside or dedicate funds for any purpose, so it is not an
item of appropriation and is not subject to veto.

The Board of Control has asked if it is prohibited from establishing a minimum
parking rate which is lower than the six dollars per month set out in the rider. In essence
the Board is asking if the rider is valid.

It is well established in Texas that

> [I]n addition to appropriating money and stipulating the amount,
> manner, and purpose of the various items of expenditure, a general
> appropriation bill may contain any provisions or riders which detail,
> limit, or restrict the use of the funds or otherwise insure that the
> money is spent for the required activity for which it is therein
> appropriated, if the provisions or riders are necessarily connected
> with and incidental to the appropriation and use of the funds, and
> provided they do not conflict with general legislation.

Attorney General Opinion V-1254 (1951).

This rider neither appropriates nor details, limits or restricts the use of funds. It is
instead a general directive to the State Board of Control to take certain affirmative
action, and it may not validly be included in the General Appropriations Act. Accordingly,
the Board of Control has the authority to set parking rates under the authority granted it
by section 3(g) of article 678e, V.T.C.S., and it is not limited to the minimum and
maximum rates set out in the appropriations act. See also House Bill 1673, 66th Leg.,
§ 4.12(c)(7).

The next two provisions of the Act raise identical issues. They are:

> Funds appropriated to The University of Texas at San Antonio for
> the fiscal year ending August 31, 1979 are hereby reappropriated for
> the biennium ending August 31, 1981.
>
> . . . .
>
> Sec. 15. Any unexpended balances as of August 31, 1980, not
> otherwise restricted and remaining in the various items of
> appropriations to the Youth Council and the institutions under its
> jurisdiction are appropriated for the fiscal year beginning

September 1, 1980, for construction projects and major repairs. The funds will be restricted to the following:

YOUTH COUNCIL BUILDING AND REPAIR PROGRAM

1. Repair sewer lift Station at West Texas Children's Home NTE, $33,000.
2. Repair or replacement of institutional streets, parking lots, curbs and gutters, NTE $325,000.

These two provisions appropriate funds remaining unspent from the prior biennium's appropriation to the two agencies. It has been suggested that the language merely directs the use of funds appropriated elsewhere, in this case in the prior appropriations act. The 1978-1979 appropriations, however, expire on August 31, 1979. Acts 1977, 65th Leg., ch. 872, at 2699; see Tex. Const. art. VIII, § 6. The 1979-1980 appropriations are not available until September 1, 1979. The two provisions set aside or dedicate funds for a specific use. Accordingly, they are items of appropriation and are subject to veto by the Governor.

The next provision you have questioned is in the portion of the Act relating to the Department of Highways and Public Transportation. It provides:

In order to insure the maintenance, preservation and construction of a system of highways, roadways and streets within the state, there shall be a program designed to accomplish improvements in traffic flow and design in cooperation with the political sub-divisions of the state and in consonance and furtherance of federal highway policy to separate congested, hazardous and dangerous grade intersections of highways and railways with the ultimate objective of accomplishing a separation of the two ground transportation systems and there is hereby appropriated Five Million Dollars ($5,000,000) per year from the General Revenue Fund to accomplish these objectives. Provided further that general revenues of the state appropriated for the implementation of this rider shall be reimbursed to the State Treasury should federal funds become available for these purposes. The State Department of Highways and Public Transportation shall have such power and authority to accomplish said objective as necessary and shall administer funds from the general revenue of the state as appropriated herein, together with funds provided from federal sources; further, the Department shall set up administrative rules, regulations, orders and standards to administer the outlay of such funds, and shall determine a priority for orderly implementation of the separations to be undertaken.

The legislature appropriated a large lump sum for contract construction. See item 3(d), p. III-65. That sum includes $5 million per year from non-general revenue funds for

grade separations. The paragraph which was vetoed and is reproduced above provides an additional $5 million per year for this purpose from the general revenue fund. It indicates that a specific amount is appropriated for a specific purpose. The language does not refer to funds appropriated elsewhere in the Act. Accordingly, the sentence appropriating $5 million per year from the general revenue fund was subject to veto. The appropriation from non-general revenue funds is, of course, not affected by the veto.

The final veto in question involved college building funds. The language which the Governor sought to veto provides:

> Sec. 3. COLLEGE BUILDING FUNDS. There also are appropriated for use the allocations from the building funds created by Article VII, Sections 17 and 18, of the State Constitution, to the respective institutions and for the purposes specified therein.

All of the funds allocated by article VII, section 18 are appropriated elsewhere in the Act, see General Appropriations Act, pp. III-28 – III-29, and thus are not subject to veto.

The final question, then, is whether the article VII, section 17 funds are subject to veto. While the language of article IV, section 3 of the appropriations act would typically be subject to veto, the funds may be appropriated by the constitution itself. If so, any further appropriation would be unnecessary and the funds would be beyond the veto authority.

Article VII, section 17 of the Texas Constitution imposes an ad valorem tax and provides a series of formulae by which the funds are to be allocated among several state-supported colleges and universities. The governing boards of the institutions are authorized to pledge funds allotted to each institution to secure bonds and notes. Article VII, section 17 goes on to provide:

> The State Comptroller of Public Accounts shall draw all necessary and proper warrants upon the State Treasury in order to carry out the purpose of this Amendment, and the State Treasurer shall pay warrants so issued out of the special fund hereby created for said purpose. This Amendment shall be self-enacting. . . .

An earlier version of this amendment was considered by the Attorney General in Attorney General Opinion V-798 (1949). The Attorney General said:

> There is necessarily involved in your request, though not definitely presented, the question of whether or not these funds are subject to legislative appropriation as a prerequisite to expenditure by the colleges. We deem it appropriate to answer that question now. The answer is in the negative. This Constitutional

Amendment, by its express terms, is self-enacting in all of its details. It specifically levies the tax, designates the use to which the fund created by the tax levy shall be applied by the Board of Regents, and directs the Comptroller to issue and the State Treasurer to pay warrants drawn upon this special fund thus created. An appropriation in a constitutional sense may be by legislative act or constitutional declaration. This is of the latter class. The effect of the explicit directions found in this Constitutional Amendment, now a part of the organic law of this State, levying the tax, creating a special fund from such levy, specifying the purposes for which it may be spent, and directing the manner of its disbursement, clearly remove this special fund from the limitations of Article VIII, Section 6 of the Constitution of this State, which provides: 'No money shall be drawn from the treasury but in pursuance of specific appropriation made by law; nor shall any appropriation of money be made for a longer term than two years.'. . .

Since these funds are appropriated by the constitution they are not subject to veto.

## SUMMARY

The Governor validly vetoed provisions of the General Appropriations Act reappropriating unexpended balances from the preceding biennium to the Texas Youth Council and to the University of Texas at San Antonio. He also had authority to veto an appropriation to the Department of Highways and Public Transportation to pay for grade separations.

Four attempted vetoes were outside the scope of the Governor's authority and are void. These include a veto of provisions relating to the Sun Bowl stadium, parking fees charged by the Board of Control, authorization of expenditures for a building to be constructed by the Department of Human Resources and college building funds.

A rider directing the Board of Control to impose certain parking fees is invalid since it is an attempt to enact general legislation in the appropriations act.

Very truly yours,

MARK WHITE
Attorney General of Texas

Honorable William P. Clements, Jr.
Honorable Bill Presnal                    –   Page Nine   (MW-51)
Honorable Homer A. Foerster


JOHN W. FAINTER, JR.
First Assistant Attorney General

TED L. HARTLEY
Executive Assistant Attorney General

Prepared by C. Robert Heath
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

C. Robert Heath, Chairman
David B. Brooks
Susan Garrison
Paul Gavia
Rick Gilpin
Terry Goodman
William G Reid
David H. Young
Bruce Youngblood